14-1395-cv
Littlejohn v. City of New York

# In the
# United States Court of Appeals
## For the Second Circuit

August Term, 2014
No. 14-1395-cv

DAWN F. LITTLEJOHN,
*Plaintiff-Appellant*,

*v.*

CITY OF NEW YORK, JOHN B. MATTINGLY, former Commissioner,
AMY BAKER, BRANDON STRADFORD,
*Defendants-Appellees*.[*]

Appeal from the United States District Court
for the Southern District of New York.
No. 13-cv-1116 — Robert W. Sweet, *Judge*.

ARGUED: NOVEMBER 5, 2014
DECIDED: AUGUST 3, 2015

Before: LEVAL, LYNCH, and DRONEY, *Circuit Judges*.

---

[*] The Clerk is requested to amend the caption to conform to the caption above.

Appeal from a judgment of the United States District Court for the Southern District of New York (Sweet, *J.*) dismissing Plaintiff's hostile work environment, disparate treatment, and retaliation claims under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, *et seq.* ("Title VII"), and 42 U.S.C. §§ 1981 and 1983, and Plaintiff's sexual harassment claim under Title VII. We **VACATE** the district court's judgment with respect to Plaintiff's disparate treatment and retaliation claims against Defendants City of New York and Amy Baker, **AFFIRM** the dismissal of the other claims, and **REMAND**.

---

GREGORY G. SMITH, New York, NY, *for Plaintiff-Appellant*.

SUSAN PAULSON (Francis F. Caputo, *on the brief*), *for* Zachary W. Carter, Corporation Counsel of the City of New York, New York, NY, *for Defendants-Appellees*.

---

DRONEY, *Circuit Judge*:

Plaintiff Dawn F. Littlejohn appeals from a judgment of the United States District Court for the Southern District of New York (Sweet, *J.*) entered on February 28, 2014. Littlejohn alleged that, while employed by the New York City Administration for

2

Children's Services ("ACS"), she was subjected to a hostile work environment and disparate treatment based on her race, and retaliated against because of complaints about such discrimination, in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), as amended, 42 U.S.C. §§ 2000e *et seq.*, and 42 U.S.C. §§ 1981 and 1983. Littlejohn also alleged that she was sexually harassed in violation of Title VII. Defendants, the City of New York ("the City") and three individuals who supervised Littlejohn at ACS, moved to dismiss Littlejohn's amended complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. The district court granted Defendants' motion to dismiss in its entirety, and Littlejohn appealed.

For the reasons set forth below, we **VACATE** the district court's judgment granting Defendants' motion to dismiss with respect to (1) Littlejohn's disparate treatment and retaliation claims against the City under Title VII, (2) Littlejohn's disparate treatment

claim against Defendant Amy Baker under §§ 1981 and 1983, and (3) Littlejohn's retaliation claim against Baker under § 1981; **AFFIRM** the dismissal of the other claims; and **REMAND** for proceedings consistent with this opinion.

## BACKGROUND

**I.     Factual Background[1]**

Littlejohn is an African-American woman with a master's degree in Industrial/Organizational Psychology from Columbia University.  She began working at ACS on April 27, 2009, as the Director of its Equal Employment Opportunity ("EEO") Office.  As Director, Littlejohn conducted investigations of claims of discrimination, trained staff, monitored hiring, counseled agency employees, organized diversity activities, and advised staff on EEO policy, duties which she alleges she performed satisfactorily.

---

[1] Because this appeal involves review at the motion to dismiss stage, we base these facts on the allegations contained in Littlejohn's amended complaint ("Compl."), which we accept as true at this stage, and the documents incorporated by reference therein. *See DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 110-11 (2d Cir. 2010).

From April to December 2009, Littlejohn's supervisor was ACS Deputy Commissioner Anne Williams-Isom, an African-American woman. Before Williams-Isom left ACS in December 2009, she gave Littlejohn an above-average performance review for her work over the previous eight months. Littlejohn does not allege that any discrimination or harassment occurred during the period in which she reported to Williams-Isom.

After Williams-Isom left ACS in late December 2009, Littlejohn began reporting to Defendant Amy Baker, a white woman and the Chief of Staff to ACS Commissioner and Defendant John B. Mattingly, a white man. Littlejohn's relationship with Baker quickly deteriorated. According to Littlejohn's complaint, Baker asked another employee "for negative information about [Littlejohn]"; "physically distanc[ed] herself from [Littlejohn] at meetings"; "increased [Littlejohn's] reporting schedule from an as-needed basis . . . to twice-weekly"; "wrongful[ly] and unnecessar[il]y

reprimand[ed]" Littlejohn; "required [Littlejohn] to re-create reasonable accommodation and EEO logs even though these logs were already in place"; became "noticeably impatient, shook her head, blew air out of her mouth when [Littlejohn] talked in the presence of other managers"; "held her head in disbelief, got red in the face, used harsh tones, removed [Littlejohn's] name from the regularly scheduled management meeting lists"; "refused to meet with [Littlejohn] face-to-face, diminished [Littlejohn's] duties and responsibilities as EEO Director"; "changed meetings that were supposed to be scheduled as in person bi-monthly meetings to twice a week over the phone discussions with [Littlejohn]"; and "replaced [Littlejohn] at management meetings with [her] white male subordinate." Compl. ¶¶ 34, 53, 71, 74-75. Littlejohn also alleges that Baker sarcastically told her "you feel like you are being left out," and that Littlejohn did not "understand the culture" at ACS. *Id.* ¶¶ 36, 49.

6

Shortly after Littlejohn began reporting to Baker, the City announced in January 2010 that ACS would merge with the City's Department of Juvenile Justice ("DJJ"). As a result of the merger, numerous employees from DJJ would be laid off, demoted, reassigned, or terminated. Littlejohn asked Baker to be included in the process of deciding which DJJ employees would be transferred or terminated "to ensure that procedures were in accordance with established . . . guidelines and policies," but Baker and other white managers allegedly "impeded, stymied, and suffocated" Littlejohn's effort to become involved in those decision-making meetings. *Id.* ¶¶ 44-45. Only after an Assistant Commissioner for the Department of Citywide Administrative Services demanded that Littlejohn be included in the meetings was she allowed to attend.

According to Littlejohn, Baker and Mattingly showed preferential treatment to white DJJ employees during the ACS/DJJ merger, while at the same time terminating, demoting, or

7

unfavorably reassigning African-American and Latino/a DJJ employees. Littlejohn alleges that she complained to Baker and Mattingly about the "selection process and failure to abide by proper anti-discrimination policies and procedures." *Id.* ¶ 64. Specifically, Littlejohn believed that Defendants were improperly and purposefully failing to conduct an "adverse impact review and analysis," which was mandated by the City's Department for Citywide Administrative Services layoff manual. *Id.* ¶ 61. Around the same time, Littlejohn also complained to Baker about the lack of African-American women in management positions, lower management levels for African-American employees compared to white employees, and pay disparities between African-American men and their white counterparts. Littlejohn's complaints, however, were "to no avail." *Id.* ¶ 64.

In March 14, 2011, Littlejohn was involuntarily transferred from the EEO Office to the Office of Personnel Services ("OPS") and

was allegedly demoted to the civil service non-managerial title of Administrative Staff Analyst, incurring a pay cut of $2,000. Littlejohn was replaced as Director of the EEO Office by Fredda Monn, a white female, who allegedly had no prior EEO experience, received more pay than Littlejohn did as EEO Director, and was provided with a "deputy EEO officer" to help with her work. *Id.* ¶ 78. Littlejohn claimed that the transfer and demotion were in retaliation for her complaints to Baker and Mattingly about "racial discrimination and violations of law" during the ACS/DJJ merger, and for her complaints about "her lack of involvement from an EEO perspective in the decision making process of DJJ and ACS Job actions." *Id.* ¶¶ 52, 68.

At OPS, Littlejohn began reporting to Brandon Stradford, the Director of Employee Relations. Stradford is an African-American man. The complaint in this action alleges that from March 2011 to September 2011, Stradford sexually harassed her through "ongoing

repeated requests for dates, [requests for] sex, touching, showing of sexually explicit photographs of himself on vacation and physically exposing" himself. *Id.* ¶ 85. Littlejohn also claimed that Stradford "repeatedly threaten[ed] to further demote" her. *Id.* ¶ 87. Littlejohn alleges that she complained in April 2011 about Stradford's harassment to an Assistant Commissioner, who declined to act on her complaints. In April 2012, Littlejohn mentioned the harassment to Monn, now the Director of the EEO Office, and to an investigator at the Equal Employment Opportunity Commission ("EEOC"), with "no results." *Id.* ¶ 93. According to Littlejohn, Monn did not provide her with an administrative form on which to complain about Stradford's sexual harassment.

On October 21, 2011, Littlejohn filed an Intake Questionnaire[2] with the EEOC, in which she alleged discrimination based on race

---

[2] An "Intake Questionnaire" allows an employee to provide the EEOC with basic preliminary information about herself, her employer, and the reason for her claim of discrimination, and begins the process of filing a charge of discrimination. When the Intake Questionnaire manifests intent to have the

and color as a result of Baker's and Mattingly's actions while she was EEO Director. Littlejohn's Intake Questionnaire did not claim discrimination based on sex or sexual harassment, nor did it mention Stradford. Instead, Littlejohn explained in the Intake Questionnaire that she believed Baker's and Mattingly's actions were discriminatory on the basis of race and color because they "fail[ed] to reassign" her to a position for which she was "suitably and well qualified"; "incessant[ly] harass[ed] and degrad[ed]" her; retaliated against her for "complaining about common ACS practices"; demoted her from "admin Staff Analyst M1 to Admin Staff Analyst (NM) and replaced [her with] a white female"; "deliberately froze[] out and excluded [her] from all deliberations, meetings and responsibilities"; "relegate[d] [her] to performing the most menial and clerical tasks"; and "strip[ped] [her] of [her] pay

agency initiate its investigatory processes, the questionnaire can itself constitute a charge of discrimination. *See Holowecki v. Fed. Express Corp.*, 440 F.3d 558, 566-67 (2d Cir. 2006).

11

level." Littlejohn Aff., Ex. 1.[3] On February 2, 2012, Littlejohn followed up her completed Intake Questionnaire by filing a formal Charge of Discrimination with the EEOC, claiming discrimination based on race and color, as well as retaliation for complaints about such discrimination. Despite the option on the EEOC charge form to claim discrimination based on sex, Littlejohn again did not make such a claim or mention Stradford or sexual harassment.

From April 27 to June 5, 2012, Littlejohn went on medical leave under the Family Medical Leave Act as a result of mental and physical health issues allegedly caused by her treatment at ACS. Littlejohn claimed that, while on leave, she was repeatedly asked for documentation of her medical condition, and that Stradford caused her paychecks to be improperly withheld. When Littlejohn returned from leave in June 2012, she was reassigned to a different manager,

[3] In reviewing a Rule 12(b)(6) motion to dismiss, "it is proper for this court to consider the plaintiff[']s relevant filings with the EEOC" and other documents related to the plaintiff's claim, even if they are not attached to the complaint, so long as those filings are either "incorporate[d] by reference" or are "integral to" and "solely relie[d]" upon by the complaint. *Holowecki*, 440 F.3d at 565-66.

Claudette Wynter, the Director of Personnel Services and an African-American woman. However, according to her complaint, Stradford continued to sexually harass her. As a result, Littlejohn wrote a letter to Monn on August 22, 2012, in which Littlejohn thanked Monn for changing her supervisor but asked to be moved farther away from Stradford. Littlejohn sent a similar email to Wynter complaining about her close proximity to Stradford. Monn eventually followed up with Littlejohn in May 2013 regarding her original complaint of sexual harassment against Stradford; Monn stated that she had investigated the complaint and was unable to find evidence to substantiate a violation of department policy.

On September 24, 2012, Littlejohn was approved to return to medical leave as a result of a "mini stroke." Compl. ¶¶ 92, 97. It was on this date that Littlejohn initially claimed she was constructively discharged.[4] Approximately one month later, on October 23, 2012, Littlejohn wrote a letter to Kevin Berry, the

[4] Littlejohn has abandoned her constructive discharge claim on appeal.

13

Director of the EEOC New York District Office, regarding the EEOC charge she previously filed on February 2 that claimed discrimination based on race and color.[5] In this letter, Littlejohn stated that "I want to be sure that you are aware [of] my additional charge of hostile work environment-sexual harassment at the hands of my manager [Brandon Stradford] within the unit in which I was placed after being unfairly demoted." Littlejohn Aff., Ex. 11. Littlejohn explained that she suffered emotional distress due to Stradford's unwanted physical advances and his constant staring at her body. Littlejohn also asked Berry to "[p]lease let me know what additional information you may need." *Id.* There is no indication in the complaint filed in this action that the EEOC responded to Littlejohn's October 23 letter.

---

[5] Littlejohn's letter was in response to a September 19, 2012 letter that she received from Berry in which Berry purportedly informed Littlejohn that her request for a right to sue letter had been forwarded to the U.S. Department of Justice for action. Littlejohn does not appear to have submitted Berry's letter to the district court and it is not part of the record on appeal.

14

On November 19, 2012, after 180 days had elapsed since Littlejohn filed her EEOC charge alleging discrimination based on race and color, the EEOC sent Littlejohn a Notice of Right to Sue Letter. Subsequently, on November 29, 2012, she went to the ACS EEO Office and filed an internal "Complaint of Discrimination Form" alleging sexual harassment by Stradford, which she gave to Monn.

**II.    Procedural History**

Littlejohn commenced this lawsuit *pro se* on February 15, 2013, and filed an amended complaint on September 23, 2013, after she retained counsel. The amended complaint alleged causes of action for hostile work environment and disparate treatment based on Littlejohn's race, and retaliation because of complaints about such discrimination, in violation of Title VII and 42 U.S.C. §§ 1981 and 1983. The complaint also alleged sexual harassment in violation of

Title VII. The Defendants are the City of New York, Mattingly, Baker, and Stradford.

On December 6, 2013, Defendants moved to dismiss all of Littlejohn's claims pursuant to Federal Rule of Civil Procedure 12(b)(6). The district court granted Defendants' motion in its entirety on February 28, 2014, concluding that Littlejohn failed to exhaust her administrative remedies as to her sexual harassment claim and failed to adequately plead her hostile work environment, disparate treatment, and retaliation claims. As to her §§ 1981 and 1983 claims, the district court held in the alternative that Littlejohn failed to allege personal responsibility with respect to individual Defendants Mattingly and Stradford, and did not state a claim against the City pursuant to *Monell v. Department of Social Services*, 436 U.S. 658 (1978).

**DISCUSSION**

**I.     Standard of Review**

This Court reviews *de novo* a district court's grant of a motion to dismiss under Rule 12(b)(6).  *Simmons v. Roundup Funding, LLC*, 622 F.3d 93, 95 (2d Cir. 2010).  On a motion to dismiss, all factual allegations in the complaint are accepted as true and all inferences are drawn in the plaintiff's favor.  *Ofori-Tenkorang v. Am. Int'l Grp., Inc.*, 460 F.3d 296, 300 (2d Cir. 2006).

Determining the propriety of the dismissal of an employment discrimination complaint under Rule 12(b)(6) requires assessment of the interplay among several Supreme Court precedents.  *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), and three subsequent Supreme Court rulings clarifying it, established the nature of a prima facie case of discrimination under Title VII.  *Swierkiewicz v. Sorema N. A.*, 534 U.S. 506 (2002), specifically addressed the requirements for *pleading* such a case.  And *Ashcroft v. Iqbal*, 556 U.S.

17

662 (2009), later asserted general pleading requirements (not specifically addressed to discrimination cases), in arguable tension with the holding of *Swierkiewicz*. We discuss each of these.

*McDonnell Douglas*, together with *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248 (1981), *St. Mary's Honor Center v. Hicks*, 509 U.S. 502 (1993), and *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133 (2000), established that the requirements of a prima facie case for a plaintiff alleging employment discrimination change as the case progresses. Ultimately, the plaintiff will be required to prove that the employer-defendant acted with discriminatory motivation. However, in the first phase of the case, the prima facie requirements are relaxed. Reasoning that fairness required that the plaintiff be protected from early-stage dismissal for lack of evidence demonstrating the employer's discriminatory motivation before the employer set forth its reasons for the adverse action it took against the plaintiff, the Supreme Court

ruled that, in the initial phase of the case, the plaintiff can establish a prima facie case without evidence sufficient to show discriminatory motivation. *See McDonnell Douglas*, 411 U.S. at 802; *Burdine*, 450 U.S. at 253-54 ("The prima facie case . . . eliminates the most common nondiscriminatory reasons for the plaintiff's rejection. . . . [W]e presume these acts, if otherwise unexplained, are more likely than not based on the consideration of impermissible factors." (internal quotation marks omitted)). If the plaintiff can show (1) that she is a member of a protected class; (2) that she was qualified for employment in the position; (3) that she suffered an adverse employment action; and, in addition, has (4) some minimal evidence suggesting an inference that the employer acted with discriminatory motivation, such a showing will raise a temporary "presumption" of discriminatory motivation, shifting the burden of production to the employer and requiring the employer to come forward with its justification for the adverse employment action against the plaintiff.

19

*Burdine*, 450 U.S. at 253-54; *St. Mary's Honor Ctr.*, 509 U.S. at 506-07. However, once the employer presents evidence of its justification for the adverse action, joining issue on plaintiff's claim of discriminatory motivation, the presumption "drops out of the picture" and the *McDonnell Douglas* framework "is no longer relevant." *St. Mary's Honor Ctr.*, 509 U.S. at 510-11. At this point, in the second phase of the case, the plaintiff must demonstrate that the proffered reason was not the true reason (or in any event not the sole reason) for the employment decision, which merges with the plaintiff's ultimate burden of showing that the defendant intentionally discriminated against her.[6] *Burdine*, 450 U.S. at 256; *St. Mary's Honor Ctr.*, 509 U.S. at 519.

---

[6] Of course, while a "satisfactory explanation by the defendant destroys the legally mandatory inference of discrimination arising from the plaintiff's initial evidence," the initial "evidence [used to establish the prima facie case] and inferences properly drawn therefrom may be considered by the trier of fact on the issue of whether the defendant's explanation is pretextual." *Burdine*, 450 U.S. at 255 n.10.

For the initial phase, in which the plaintiff benefited from the presumption, the Supreme Court's precedents left unclear how much evidence a plaintiff needed to shift the burden of production to the employer. It suggested in *McDonnell Douglas* that it would be sufficient for a disappointed job seeker who was a member of a protected class to show that she was qualified for the position, that the position remained open, and that the employer continued to seek applicants for the position, without need for any further evidence of discriminatory intent. 411 U.S. at 802. In *Burdine*, the Court held that it was sufficient for the disappointed applicant to show that the job went to one who was not a member of her protected class. 450 U.S. at 253 n.6. The Court characterized this initial burden as "not onerous," *Burdine*, 450 U.S. at 253, and as "minimal," *St. Mary's Honor Ctr.*, 509 U.S. at 506.

The next pertinent Supreme Court precedent is *Swierkiewicz.* In *Swierkiewicz,* the plaintiff was a Hungarian national, 53 years of

21

age, who had been dismissed by his employer, a French company. 534 U.S. at 508. He brought suit alleging national origin discrimination under Title VII, and age discrimination. His complaint included little in the way of factual allegations supporting an inference of national origin discrimination, other than his Hungarian nationality in a French company, and very little to support his claim of age discrimination. *Id.* The district court granted the defendant's motion to dismiss the complaint for failure to make out a prima facie case, apparently assuming that the requirements of the prima facie case applied to pleading as well as proof, and that the plaintiff's allegations were insufficient to meet even the reduced prima facie standards at the initial phase of the case. *See Swierkiewicz v. Sorema, N.A.*, No. 99 Civ. 12272(LAP), 2000 U.S. Dist. LEXIS 21547 (S.D.N.Y. July 26, 2000). Referring to a memorandum that was incorporated into the complaint and upon which the plaintiff relied, the district court explained that "[t]here is

22

nothing in the memorandum from which age or national origin discrimination can be inferred." *Id.* at *4. Addressing the allegations of both age and national origin discrimination, the court characterized them as "conclusory" and "insufficient as a matter of law to raise an inference of discrimination." *Id.* at *5. Our Court affirmed. *Swierkiewicz v. Sorema, N.A.*, 5 F. App'x 63 (2d Cir. 2001).

The Supreme Court reversed. *Swierkiewicz*, 534 U.S. 506. The Supreme Court clarified that the standard espoused by the *McDonnell Dougla*s line of cases for prima facie sufficiency was "an evidentiary standard, not a pleading requirement." *Id.* at 510. The Court characterized our ruling as unwarrantedly imposing a "heightened pleading standard in employment discrimination cases [that] conflicts with Federal Rule of Civil Procedure 8(a)(2)." *Id.* at 512. The Court explained that "under a notice pleading system, it is not appropriate to require a plaintiff to plead facts establishing a prima facie case." *Id.* at 511. The complaint needed only to "'give

23

the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests.'" *Id.* at 512 (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). The Court thus concluded that the plaintiff's allegation "that he had been terminated on account of his national origin in violation of Title VII and on account of his age in violation of the ADEA" gave the employer "fair notice of what [the plaintiff's] claims are and the grounds upon which they rest." *Id.* at 514. Reading *Swierkiewicz* on its face, it appears to have meant that a Title VII plaintiff is not required to plead facts supporting even a minimal inference of discriminatory intent.

The final Supreme Court precedent that bears on the standard for determining the sufficiency of a Title VII complaint is *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). The plaintiff in *Iqbal* alleged that governmental defendants, including the Attorney General of the United States, had unconstitutionally discriminated against him by reason of his Pakistani nationality and Muslim religion, resulting in

24

his detention under harsh conditions. The Court found the complaint insufficient to state a claim that the defendants had acted with a "discriminatory state of mind." *Id.* at 683. The Supreme Court had recently determined in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), that a complaint alleging an unlawful agreement in restraint of trade must include "enough factual matter (taken as true) to suggest [plausibly] that an agreement was made," *id.* at 556, or otherwise include "enough facts to state a claim to relief that is plausible on its face," *id.* at 570. The issue in *Iqbal* was whether the earlier ruling in *Twombly* applied only in the antitrust context or more broadly. The Court decided that the *Twombly* ruling did not apply solely in the antitrust context. It ruled that, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678 (internal quotation marks omitted).

The question then arises whether *Iqbal*'s requirement applies to Title VII complaints falling under the *McDonnell Douglas* framework.[7]  At least two arguments can be advanced that the *Iqbal* requirement does not apply to such cases.  The first is that the requirement to allege facts would appear contradictory to the Supreme Court's ruling a few years earlier in *Swierkiewicz*.  The second is that the *Iqbal* ruling of otherwise general applicability might not apply to a particular area for which the Supreme Court in the *McDonnell Douglas* quartet had devised a set of special rules that deviate from the customary prima facie rules.

The best argument that the *Iqbal* requirement does apply to Title VII complaints is that the *Iqbal* ruling is broad, and the Court

[7] We note that in *E.E.O.C. v. Port Authority of New York & New Jersey*, 768 F.3d 247 (2d Cir. 2014), our Court found that the *Iqbal* requirement was applicable to a complaint alleging a violation of the Equal Pay Act.  *See id.* at 254.  That case does not answer the question whether the *Iqbal* rule applies to Title VII complaints governed by *McDonnell Douglas*.  Under the Equal Pay Act, liability turns on whether lesser pay is given for equivalent work—discriminatory motivation is not an element of the claim.  *See Lavin-McEleney v. Marist Coll.*, 239 F.3d 476, 480 (2d Cir. 2001).  Moreover, the Equal Pay Act does not fall under the burden-shifting framework of *McDonnell Douglas*.  *See Belfi v. Prendergast*, 191 F.3d 129, 135 (2d Cir. 1999).

26

gave no suggestion that it should not apply to cases falling under *McDonnell Douglas*. As for whether the applicability of *Iqbal* to Title VII pleadings would be contradictory to *Swierkiewicz*, this depends on how one interprets *Swierkiewicz*. Reading that case on its face, it appears to hold that under the notice pleading regime of the Federal Rules, a Title VII discrimination complaint need not assert facts supporting an inference of discriminatory intent, but may simply use the word discrimination, thereby adequately communicating to the defendant the nature of the claim. *See Swierkiewicz*, 534 U.S. at 511-12. On the other hand, in *Twombly*, the Supreme Court cast doubt on whether *Swierkiewicz* should be interpreted as meaning that a Title VII complaint did not need to allege facts giving minimal support to an inference of discrimination. The plaintiff in *Twombly* argued against a requirement to plead facts, asserting that such a requirement would be contrary to the *Swierkiewicz* holding. *See Twombly*, 550 U.S. at 569 (noting that the plaintiff contended that the

27

position adopted by the Court "runs counter to [*Swierkiewicz*'s holding] that a complaint in an employment discrimination lawsuit [need] not contain specific facts establishing a prima facie case of discrimination" (internal quotation marks omitted)). The Court rejected the plaintiff's argument. The Court characterized *Swierkiewicz* as meaning nothing more than that the plaintiff's pleadings contained sufficient factual allegations to satisfy the "liberal pleading requirements" of the Federal Rules and that our Circuit had improperly invoked a "heightened pleading standard for Title VII cases" by requiring the plaintiff "to allege certain additional facts that [he] would need at the trial stage." *Id.* at 570.[8]

As for the argument that the Supreme Court was unlikely to have intended in *Iqbal* to add new wrinkles to the special field of Title VII suits, which the Supreme Court had so extensively covered in the *McDonnell Douglas* quartet of cases, arguably there is no

---

[8] *Twombly* also pointed to *Swierkiewicz* for the unrelated point that courts must assume the truth of sufficiently detailed factual allegations in passing upon a 12(b)(6) motion. *Twombly*, 550 U.S. at 555-56.

28

incompatibility, or even tension, between the burden-shifting framework of *McDonnell Douglas* and a requirement that the complaint include reference to sufficient facts to make its claim plausible—at least so long as the requirement to plead facts is assessed in light of the presumption that arises in the plaintiff's favor under *McDonnell Douglas* in the first stage of the litigation.

It is uncertain how the Supreme Court will apply *Iqbal*'s requirement of facts sufficient to support plausibility to Title VII complaints falling under the *McDonnell Douglas* framework. We conclude that *Iqbal*'s requirement applies to Title VII complaints of employment discrimination, but does not affect the benefit to plaintiffs pronounced in the *McDonnell Douglas* quartet. To the same extent that the *McDonnell Douglas* temporary presumption reduces the facts a plaintiff would need to *show* to defeat a motion for summary judgment prior to the defendant's furnishing of a

29

non-discriminatory motivation, that presumption also reduces the facts needed to be *pleaded* under *Iqbal*.

The *Iqbal* requirement is for facts supporting "plausibility." The Supreme Court explained that "[t]he plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678. The question we face is what, in the Title VII context, must be plausibly supported by factual allegations when the plaintiff does not have direct evidence of discriminatory intent at the outset. Answering this question requires attention to the shifting content of the prima facie requirements in a Title VII employment discrimination suit. Recapitulating what we have spelled out above, while the plaintiff ultimately will need evidence sufficient to prove discriminatory motivation on the part of the employer-defendant, at the initial stage of the litigation—prior to the employer's coming forward with the claimed reason for its action—the plaintiff does not

need substantial evidence of discriminatory intent. If she makes a showing (1) that she is a member of a protected class, (2) that she was qualified for the position she sought, (3) that she suffered an adverse employment action, and (4) can sustain a *minimal* burden of showing facts suggesting an inference of discriminatory motivation, then she has satisfied the prima facie requirements and a presumption of discriminatory intent arises in her favor, at which point the burden of production shifts to the employer, requiring that the employer furnish evidence of reasons for the adverse action. *Burdine*, 450 U.S. at 253-54; *St. Mary's Honor Ctr.*, 509 U.S. at 506-07. At this stage, a plaintiff seeking to defeat a defendant's motion for summary judgment would not need evidence sufficient to sustain her ultimate burden of showing discriminatory motivation, but could get by with the benefit of the presumption if she has shown evidence of the factors entitling her to the presumption.

31

The discrimination complaint, by definition, occurs in the first stage of the litigation. Therefore, the complaint also benefits from the temporary presumption and must be viewed in light of the plaintiff's minimal burden to show discriminatory intent. The plaintiff cannot reasonably be required to allege more facts in the complaint than the plaintiff would need to defeat a motion for summary judgment made prior to the defendant's furnishing of a non-discriminatory justification. *Cf. Swierkiewicz*, 534 U.S. at 511-12 ("It . . . seems incongruous to require a plaintiff, in order to survive a motion to dismiss, to plead more facts than he may ultimately need to prove to succeed on the merits if direct evidence of discrimination is discovered.").

In other words, absent direct evidence of discrimination, what must be plausibly supported by facts alleged in the complaint is that the plaintiff is a member of a protected class, was qualified, suffered an adverse employment action, and has at least minimal support for

32

the proposition that the employer was motivated by discriminatory intent. The facts alleged must give plausible support to the reduced requirements that arise under *McDonnell Douglas* in the initial phase of a Title VII litigation.[9] The facts required by *Iqbal* to be alleged in the complaint need not give plausible support to the ultimate question of whether the adverse employment action was attributable to discrimination. They need only give plausible support to a minimal inference of discriminatory motivation.

We now turn to the assessment of the sufficiency of Littlejohn's several claims.

**II.    Disparate Treatment Claim**

Littlejohn alleges disparate treatment based on race as a result of her demotion from EEO Director to a lower-paying, non-managerial analyst position in March 2011. Littlejohn's disparate

---

[9] The First Circuit perhaps intended to convey a similar understanding of the interplay between *Iqbal* and the *McDonnell Douglas* quartet when it stated that "the elements of a prima facie case may be used as a prism to shed light upon the plausibility of the claim." *Rodriguez-Reyes v. Molina-Rodriguez*, 711 F.3d 49, 54 (1st Cir. 2013).

treatment claim under Title VII, § 1981, and § 1983 is subject to the burden-shifting evidentiary framework set forth in *McDonnell Douglas*. *See Ruiz v. Cnty. of Rockland*, 609 F.3d 486, 491 (2d Cir. 2010). As set forth above, because this appeal involves review of a motion to dismiss, we focus only on whether the allegations in the complaint give plausible support to the reduced prima facie requirements that arise under *McDonnell Douglas* in the initial phase of a litigation.

**A. Littlejohn's Disparate Treatment Allegations**

The parties do not dispute that Littlejohn's allegations would be sufficient to establish the first three prongs of a prima facie case of discrimination in the initial phase, as the complaint alleges that she belongs to a protected class (black), was qualified for the EEO Director position at issue, and suffered an adverse employment action through her demotion.[10] Rather, the parties dispute whether

---

[10] To the extent Littlejohn attempts to point to exclusion from meetings involving the ACS/DJJ merger as part of her disparate treatment claim, such exclusion does

34

the allegations give plausible support to the conclusion that the demotion occurred under circumstances giving rise to an inference of discrimination.

An inference of discrimination can arise from circumstances including, but not limited to, "the employer's criticism of the plaintiff's performance in ethnically degrading terms; or its invidious comments about others in the employee's protected group; or the more favorable treatment of employees not in the protected group; or the sequence of events leading to the plaintiff's discharge." *Leibowitz v. Cornell Univ.*, 584 F.3d 487, 502 (2d Cir. 2009) (internal quotation marks omitted). As discussed previously, none

not constitute an adverse employment action within the meaning of Title VII. An adverse employment action is "more disruptive than a mere inconvenience or an alteration of job responsibilities." *Galabya v. N.Y.C. Bd. of Educ.*, 202 F.3d 636, 640 (2d Cir. 2000) (internal quotation marks omitted). It is "a *materially significant disadvantage* with respect to the terms of [the plaintiff's] employment." *Williams v. R.H. Donnelley, Corp.*, 368 F.3d 123, 128 (2d Cir. 2004) (emphasis added) (internal quotation marks omitted). Examples of materially significant disadvantages include termination, demotion, "a less distinguished title, a material loss of benefits, [or] significantly diminished material responsibilities." *Galabya*, 202 F.3d at 640. Baker's failure to include Littlejohn in the decision-making process of the merger did not "significantly diminish[]" Littlejohn's responsibilities. *Id.*

of Defendants' actions directly indicates racial bias. Additionally, to the extent Littlejohn attempts to rely on adverse employment actions taken against other employees who worked for different agencies and who had different jobs, *see* Compl. ¶¶ 17-24, the district court correctly concluded that adverse actions taken against employees who are not similarly situated cannot establish an inference of discrimination. *See Mandell v. Cnty. of Suffolk*, 316 F.3d 368, 379 (2d Cir. 2003) (explaining that a plaintiff attempting to "show[] that the employer treated [her] less favorably than a similarly situated employee outside [her] protected group . . . must show she was similarly situated in all material respects to the individuals with whom she seeks to compare herself." (internal quotation marks omitted)).

However, an inference of discrimination also arises when an employer replaces a terminated or demoted employee with an individual outside the employee's protected class. *See, e.g., Carlton v.*

36

*Mystic Transp., Inc.*, 202 F.3d 129, 135 (2d Cir. 2000) ("[A] plaintiff has demonstrated an inference of age discrimination and thus established a *prima facie* case . . . where the majority of plaintiff's responsibilities were transferred to a younger co-worker."); *de la Cruz v. N.Y.C. Human Res. Admin. Dep't of Soc. Servs.*, 82 F.3d 16, 20 (2d Cir. 1996) ("As a Puerto Rican, de la Cruz is a member of a protected class.  Because de la Cruz was replaced by a black female, he also satisfies the fourth prong of the *prima facie* case."); *Cook v. Arrowsmith Shelburne, Inc.*, 69 F.3d 1235, 1239 (2d Cir. 1995) ("To establish a prima facie case of gender discrimination, a female plaintiff must show that she was qualified for the position, that her employer discharged her, and that the employer sought or hired a male to replace her.").  As we have explained, "the evidence necessary to satisfy th[e] initial burden" of establishing that an adverse employment action occurred under circumstances giving rise to an inference of discrimination is "minimal."  *Zimmermann v.*

*Assocs. First Capital Corp.*, 251 F.3d 376, 381 (2d Cir. 2001). The fact that a plaintiff was replaced by someone outside the protected class will ordinarily suffice for the required inference of discrimination at the initial prima facie stage of the Title VII analysis, including at the pleading stage. *Id.*

Littlejohn alleges that she was replaced by a white ACS employee, Fredda Monn, after she was demoted from EEO Director. Littlejohn also alleges that Monn was less qualified for the position. According to Littlejohn's complaint, Monn had "no prior EEO experience," as she "was previously the Director of the Accountability/Review Unit that had nothing to do with EEO matters" but rather "involved the comprehensive review of child welfare case practices." Compl. ¶ 78. Littlejohn's factual allegations are more than sufficient to make plausible her claim that her demotion occurred under circumstances giving rise to an inference

38

of discrimination. *See Zimmermann*, 251 F.3d at 381.[11] Accordingly, we hold that Littlejohn's complaint alleges sufficient facts to satisfy the requirements of *Iqbal*. The district court therefore erred in dismissing this claim.

**B. Liability of the Individual and City Defendants**

We must now determine, based on these allegations, which Defendants must face Littlejohn's disparate treatment claim under Title VII and §§ 1981 and 1983. We first note that Title VII "does not create liability in individual supervisors and co-workers who are not the plaintiffs' actual employers." *Raspardo v. Carlone*, 770 F.3d 97, 113 (2d Cir. 2014). Thus, Littlejohn's disparate treatment claim

---

[11] Defendants, citing *Harding v. Wachovia Capital Markets, LLC*, 541 F. App'x 9 (2d Cir. 2013), argue that Littlejohn needed to plead factual allegations indicating that her qualifications were "so superior" to those of Monn that no reasonable employer could have chosen Monn over Littlejohn for the position. Defs.' Br. 27. *Harding*, however, involved a plaintiff's failure to demonstrate that the defendants' non-discriminatory reasons for not promoting him were pretextual on a motion for summary judgment. 541 F. App'x at 12-13. At the prima facie stage, "the mere fact that a plaintiff was replaced by someone outside the protected class will suffice for the required inference of discrimination." *Zimmermann*, 251 F.3d at 381.

under Title VII fails as to Defendants Baker, Mattingly,[12] and Stradford, but survives as to her employer, the City.

Littlejohn's disparate treatment claim under §§ 1981 and 1983 fails as to Mattingly and Stradford. An individual may be held liable under §§ 1981 and 1983 only if that individual is "personally involved in the alleged deprivation." *Back v. Hastings on Hudson Union Free Sch. Dist.*, 365 F.3d 107, 127 (2d Cir. 2004) (§ 1983); *Patterson v. Cnty. of Oneida*, 375 F.3d 206, 229 (2d Cir. 2004) (§ 1981); *see also Raspardo*, 770 F.3d at 116 ("[Section] 1983 requires individual, personalized liability on the part of each government defendant. . . . '[B]ecause vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the

---

[12] Although the complaint also alleges suit against Mattingly in his official capacity, Littlejohn does not argue on appeal that the district court erred in dismissing her claims against Mattingly in his official capacity. We therefore deem the argument forfeited. *See Norton v. Sam's Club*, 145 F.3d 114, 117 (2d Cir. 1998) ("Issues not sufficiently argued in the briefs are considered waived and normally will not be addressed on appeal.").

Constitution.'" (second ellipsis in original) (quoting *Iqbal*, 556 U.S. at 676)). Personal involvement can be established by showing that:

> (1) the defendant participated directly in the alleged constitutional violation, (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong, (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom, (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts, or (5) the defendant exhibited deliberate indifference . . . by failing to act on information indicating that unconstitutional acts were occurring.

*Back*, 365 F.3d at 127. In addition to fulfilling one of these requirements, "a plaintiff must also establish that the supervisor's actions were the proximate cause of the plaintiff's constitutional deprivation. Finally, as with individual liability, in the § 1983 context, a plaintiff must establish that a supervisor's behavior constituted intentional discrimination on the basis of a protected characteristic . . . ." *Raspardo*, 770 F.3d at 116 (citation omitted).

Littlejohn does not allege that Mattingly or Stradford had any personal involvement in Littlejohn's demotion, as Littlejohn concedes that Baker alone made the decision to demote her. In fact, Littlejohn alleges that Mattingly "encouraged" Littlejohn to "be part of the panel of managers that implemented the intake of DJJ." Compl. ¶ 43. Nothing in the complaint could lead to an inference that Mattingly personally participated in Baker's decision to demote Littlejohn. Nor do Mattingly's statements that Baker "was hurt" and that Baker "wields a lot of power around here" create a plausible inference that Mattingly was grossly negligent as Baker's supervisor in allowing Baker to demote her. *Id.* ¶ 51. Similarly, Stradford's alleged harassment was relevant only to Littlejohn's sexual harassment claim, not to Littlejohn's demotion. Therefore, because only Baker was personally involved in the decision to demote Littlejohn, Littlejohn's disparate treatment claim under §§ 1981 and 1983 survives only against Baker.

42

Finally, Littlejohn's disparate treatment claim against the City fails under §§ 1981 and 1983. When a defendant sued for discrimination under §§ 1981 or 1983 is a municipality, "the plaintiff is required to show that the challenged acts were performed pursuant to a municipal policy or custom." *Patterson*, 375 F.3d at 226 (citing *Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 733-36 (1989) (§ 1981); *Monell*, 436 U.S. at 692-94 (§ 1983)). The plaintiff "need not identify an express rule or regulation," but can show that "a discriminatory practice of municipal officials was so persistent or widespread as to constitute a custom or usage with the force of law, or that a discriminatory practice of subordinate employees was so manifest as to imply the constructive acquiescence of senior policy-making officials." *Id.* (citation and internal quotation marks omitted). Here, Littlejohn does not allege a persistent or widespread municipal policy or "custom . . . with the force of law" that enabled the discrimination against her—*i.e.*, her demotion—other than her

43

general and conclusory allegation that there was such a policy. Littlejohn's claim against the City is, at bottom, premised on a theory of *respondeat superior* for Baker's actions, which cannot be the basis of municipal defendant liability under §§ 1981 or 1983. *Id.* Additionally, Baker's decision to demote Littlejohn cannot establish that "a discriminatory practice of subordinate employees was so manifest as to imply the constructive acquiescence of senior policy-making officials." *Id.* (internal quotation marks omitted). True, a "single unlawful discharge, if ordered by a person whose edicts or acts may fairly be said to represent official policy, can, by itself, support a claim against a municipality." *Back*, 365 F.3d at 128 (internal quotation marks omitted). But Baker was not a final municipal policymaker such that her isolated personnel decision to demote Littlejohn could be said to represent official City policy. *See, e.g.*, *Soto v. Schembri*, 960 F. Supp. 751, 759 (S.D.N.Y. 1997) (noting that "[t]he New York City Charter vests final policymaking

authority in the Mayor and the City Council" and that "[t]he Charter vests policymaking authority with respect to personnel decisions with the [City's] Personnel Director").

In sum, Littlejohn's disparate treatment claim with respect to her demotion survives against the City under Title VII, and against Defendant Baker under §§ 1981 and 1983.[13] Littlejohn's disparate treatment claim against Defendants Mattingly and Stradford was properly dismissed by the district court.

**III. Retaliation Claim**

Littlejohn also claims she was retaliated against because of her complaints about racial discrimination in the reorganization process following the merger of ACS and DJJ. Retaliation claims under Title

---

[13] It is uncontested at this stage that Baker was acting under color of state law when she demoted Littlejohn, as is required for § 1983 liability. *See, e.g., Annis v. Cnty. of Westchester*, 36 F.3d 251, 254 (2d Cir. 1994) ("There can be no question that defendants . . . are, in their personal capacities, amenable to suit under [§ 1983], inasmuch as they were conducting themselves as supervisors for a public employer and thus were acting under color of state law [when they allegedly discriminated against the plaintiff].").

45

VII and § 1981[14] are both analyzed pursuant to Title VII principles and the *McDonnell Douglas* burden-shifting evidentiary framework. *See Hicks v. Baines*, 593 F.3d 159, 164 (2d Cir. 2010). Section 704(a) of Title VII includes an anti-retaliation provision that makes it unlawful "for an employer to discriminate against any . . . employee[] . . . because [that individual] opposed any practice" made unlawful by Title VII or "made a charge, testified, assisted, or participated in" a Title VII investigation or proceeding. 42 U.S.C. § 2000e-3(a). To establish a presumption of retaliation at the initial stage of a Title VII litigation, a plaintiff must present evidence that shows "(1) participation in a protected activity; (2) that the defendant knew of the protected activity; (3) an adverse employment action; and (4) a causal connection between the protected activity and the adverse employment action." *Hicks*, 593

---

[14] The Equal Protection Clause does not protect against retaliation due to complaints of racial discrimination. *Bernheim v. Litt*, 79 F.3d 318, 323 (2d Cir. 1996). Littlejohn's retaliation claim therefore fails under § 1983. Section 1981, however, does encompass retaliation claims. *See CBOCS W., Inc. v. Humphries*, 553 U.S. 442, 446 (2008).

F.3d at 164 (internal quotation marks omitted). As with our analysis of the disparate treatment claim, the allegations in the complaint need only give plausible support to the reduced prima facie requirements that arise under *McDonnell Douglas* in the initial phase of a Title VII litigation.

The parties do not dispute that Littlejohn's allegations, taken as true, would suffice to establish the second and third prongs of a prima facie case of retaliation. Defendants certainly knew of Littlejohn's complaints of discrimination in the ACS/DJJ merger process, and Littlejohn's demotion constitutes an adverse employment action.[15] The parties dispute, however, whether Littlejohn's actions constitute protected activities, and whether Littlejohn has plausibly alleged a causal connection between the protected activities and the adverse employment action.

---

[15] As described above, only Littlejohn's demotion constitutes an adverse employment action, not her exclusion from meetings involving the ACS/DJJ merger. *See Galabya*, 202 F.3d at 640. In any case, Littlejohn was excluded from meetings before she began complaining about discrimination in the merger process, so that exclusion could not have been in retaliation for her complaints.

47

## A. Protected Activities Under § 704(a)

We first examine whether Littlejohn participated in a "protected activity" under the retaliation provisions of Title VII. For purposes of determining whether an activity is protected, § 704(a) includes "both an opposition clause and a participation clause." *Townsend v. Benjamin Enters., Inc.*, 679 F.3d 41, 48 (2d Cir. 2012). The opposition clause makes it unlawful for an employer to retaliate against an individual because she "opposed any practice" made unlawful by Title VII, while the participation clause makes it unlawful to retaliate against an individual because she "made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under" Title VII. *Id.* (quoting 42 U.S.C. § 2000e-3(a)). We have recently made clear that the participation clause only encompasses participation in formal EEOC proceedings; it "does not include participation in an internal

48

employer investigation unrelated to a formal EEOC charge." *Id.* at 49.

The district court concluded that Littlejohn's complaints of racial discrimination to Mattingly and Baker during the ACS/DJJ merger were not protected activities under either § 704(a)'s participation clause or opposition clause. The district court was correct to conclude that Littlejohn's internal complaints of discrimination prior to her EEOC proceedings, which commenced in October 2011, were not protected activities under the participation clause, as those complaints were "unrelated to a formal EEOC charge." *Id.* However, the district court erred in concluding that Littlejohn's complaints were not protected activities under the opposition clause.

This Court has not addressed the extent to which an employee's complaints of discrimination are protected activities under the opposition clause when that employee's job

responsibilities involve preventing and investigating discrimination within the company or agency by which she is employed. Several district courts in this Circuit, focusing largely on the scope of an employee's job responsibilities, have held that "a supervisor's involvement, as part of his routine job duties, in reporting or investigating incidents of harassment between employees under his supervision does not qualify as protected activity." *Sarkis v. Ollie's Bargain Outlet*, No. 10-CV-6382 CJS, 2013 WL 1289411, at *13 (W.D.N.Y. Mar. 26, 2013) (emphasis omitted); *see also Adams v. Northstar Location Servs., LLC*, No. 09-CV-1063-JTC, 2010 WL 3911415, at *4 (W.D.N.Y. Oct. 5, 2010) ("[P]laintiff's actions in investigating the complaint of race-based harassment would not constitute protected activity, as plaintiff was acting in the scope of her employment as a human resources director by interviewing the witnesses to the incident."); *Ezuma v. City Univ. of N.Y.*, 665 F. Supp. 2d 116, 123-24 (E.D.N.Y. 2009) ("[I]f an academic chairperson is

required as part of his job to report incidents of sexual harassment that come to his attention, as is the case here, the mere performance of that function is not 'opposition' to his employer and does not constitute protected activity.").

The Supreme Court, however, recently clarified in *Crawford v. Metropolitan Government of Nashville & Davidson County* that, "[w]hen an employee communicates to her employer a belief that the employer has engaged in . . . a form of employment discrimination, that communication *virtually always* constitutes the employee's *opposition* to the activity." 555 U.S. 271, 276 (2009) (first emphasis added) (internal quotation marks omitted). *Crawford* stated that any activity designed "to resist or antagonize . . . ; to contend against; to confront; resist; [or] withstand" discrimination prohibited by Title VII constitutes a protected oppositional activity.[16] *Id.* (internal

---

[16] Prior to *Crawford*, certain Circuits had applied the so-called "manager rule" to retaliation claims under the Fair Labor Standards Act, which other courts, in turn, imported to claims under Title VII. This rule provided that complaints of discrimination within the scope of a manager's job duties are not protected

quotation marks omitted). *Crawford* is consistent with our prior decisions, in which we have explained that protected activities are not limited to complaints involving discrimination against the complainant herself, but also extend to complaints of discrimination on behalf of other employees and complaints of discriminatory practices generally: "§ 704(a)'s opposition clause protects [formal] as well [as] informal protests of discriminatory employment practices, including making complaints to management, writing critical letters to customers, protesting against discrimination by industry or by

activities, and that, in order to engage in protected activity, the employee must "step outside his or her role of representing the company" and take action adverse to the company. *McKenzie v. Renberg's Inc.*, 94 F.3d 1478, 1486 (10th Cir. 1996); *see also Brush v. Sears Holdings Corp.*, 466 F. App'x 781, 787 (11th Cir. 2012); *Hagan v. Echostar Satellite, L.L.C.*, 529 F.3d 617, 627-28 (5th Cir. 2008). It is unclear whether *Crawford* superseded the manager rule. *See Weeks v. Kansas*, 503 F. App'x 640, 643 (10th Cir. 2012) (explaining that "one might perhaps argue that *McKenzie*'s rule itself has been superseded" by *Crawford*). *But see Brush*, 466 F. App'x at 787 ("While Brush argues that *Crawford* has foreclosed the 'manager rule,' we cannot agree." (footnote omitted)); *Collazo v. Bristol-Myers Squibb Mfg., Inc.*, 617 F.3d 39, 49 (1st Cir. 2010) ("assum[ing]," post-*Crawford*, that "to engage in protected conduct under Title VII's retaliation provision, an employee must step outside his ordinary employment role of representing the company and take action adverse to the company"). In any event, we decline to adopt the manager rule here. The manager rule's focus on an employee's job duties, rather than the oppositional nature of the employee's complaints or criticisms, is inapposite in the context of Title VII retaliation claims.

52

society in general, and expressing support of co-workers who have filed formal charges." *Sumner v. U.S. Postal Serv.*, 899 F.2d 203, 209 (2d Cir. 1990).

Significantly, neither *Crawford* nor *Sumner* restricted their holdings to non-managers or to employees whose job responsibilities are untethered to monitoring discrimination or enforcing non-discrimination policies. And for good reason: The plain language of § 704(a)'s opposition clause—which prohibits employers from "discriminat[ing] against *any* . . . employee[] . . . because he has opposed any practice made an unlawful employment practice by this subchapter," 42 U.S.C. § 2000e-3(a) (emphasis added)—does not distinguish among entry-level employees, managers, and any other type of employee.

Defendants suggest that allowing personnel officers to bring retaliation claims under the opposition clause based on complaints lodged in connection with their official duties would create an

automatic prima facie case of retaliation for any terminated human resources or EEO employee. Since such employees' daily work involves reporting on claims of discrimination in ways that could be construed as "opposing" discrimination, Defendants reason that any adverse action taken against those employees would likely be in close proximity to such opposition and could consequently risk embroiling an employer in gratuitous litigation.

Whatever the merits of that argument, we are not empowered to create exceptions to § 704(a) inconsistent with the statutory language. In any event, we do not believe that our interpretation will have any such dire effect. There is a significant distinction between merely reporting or investigating other employees' complaints of discrimination, which simply fulfills a personnel manager's daily duties, and communicating to the employer the manager's own "belief that the employer has engaged in . . . a form of employment discrimination," which "virtually always

54

constitutes" opposition notwithstanding the employee's underlying job responsibilities. *Crawford*, 555 U.S. at 276 (internal quotation marks omitted). Where the officer merely transmits or investigates a discrimination claim without expressing her own support for that claim, "the mere passing on of [a complainant's] statements by a supervisor or human resources manager is not inherently 'oppositional' in the same way as the victim's own report of that misconduct." *Ezuma*, 665 F. Supp. 2d at 123.

Accordingly, consistent with *Crawford*, *Sumner*, and the plain language of § 704(a), we hold as follows: To the extent an employee is required as part of her job duties to report or investigate other employees' complaints of discrimination, such reporting or investigating by itself is not a protected activity under § 704(a)'s opposition clause, because merely to convey others' complaints of discrimination is not to oppose practices made unlawful by Title VII. But if an employee—even one whose job responsibilities involve

55

investigating complaints of discrimination—actively "support[s]" other employees in asserting their Title VII rights or personally "complain[s]" or is "critical" about the "discriminatory employment practices" of her employer, that employee has engaged in a protected activity under § 704(a)'s opposition clause. *Sumner*, 899 F.2d at 209.

Here, Littlejohn alleges that she, "in her capacity as Director of EEO[,] repeatedly objected and complained to defendants Mattingly and Baker about defendants' selection process and failure to abide by proper anti-discrimination policies and procedures." Compl. ¶ 64. Littlejohn also alleges that she "objected to defendants Mattingly and Bakers' discriminatory policies during scheduled meetings with them" over the course of more than a year. *Id.* ¶ 65. Littlejohn argues on appeal that she stepped outside her role as EEO Director when she advocated for minority DJJ employees, but regardless of whether she made these complaints in her capacity as

56

EEO Director, "§ 704(a)'s opposition clause protects" such "complaints to management" and "protest[s] against discrimination." *Sumner*, 899 F.2d at 209. Littlejohn was not simply conveying others' complaints of discrimination to Mattingly and Baker or alerting them to Title VII's mandates; she was complaining about what she believed was unlawful discrimination in the personnel decision-making process during the ACS/DJJ merger. Her complaints of discrimination were protected activities under § 704(a)'s opposition clause.

## B. Causal Connection Between the Protected Activity and the Adverse Employment Action

We next consider whether Littlejohn pleaded a causal connection between the protected activities and her demotion. Although the district court cabined Littlejohn's protected activities to two discrete time periods—between January and April 2010, and after October 2010—Littlejohn in fact alleges that "[d]uring the above stated time period [between January 2010 and March 2011],

57

Plaintiff in her capacity as Director of EEO repeatedly objected and complained to defendants Mattingly and Baker about defendants' selection process and failure to abide by proper policies and procedures." Compl. ¶¶ 63-64. Littlejohn also claimed that "[f]rom on or about January 2010 to *March 14, 2011* Plaintiff objected to defendants Mattingly and Bakers' discriminatory policies during scheduled meetings with them." *Id.* ¶ 65 (emphasis added). Accordingly, Littlejohn alleges that her complaints about racial discrimination began around the time of the ACS/DJJ merger and continued until she was demoted from EEO Director.

A causal connection in retaliation claims can be shown either "(1) indirectly, by showing that the protected activity was followed closely by discriminatory treatment, or through other circumstantial evidence such as disparate treatment of fellow employees who engaged in similar conduct; or (2) directly, through evidence of retaliatory animus directed against the plaintiff by the defendant."

58

*Gordon v. N.Y.C. Bd. of Educ.*, 232 F.3d 111, 117 (2d Cir. 2000). As discussed above, none of Defendants' actions directly indicates racial bias, nor do those actions directly establish retaliatory animus based on Littlejohn's complaints of discrimination during the ACS/DJJ merger.

However, Littlejohn sufficiently pleaded facts that would indirectly establish causation. According to Littlejohn's complaint, her demotion closely followed her protests of discrimination. Although the district court concluded that Littlejohn's complaints of discrimination began over a year before her March 2011 demotion, Littlejohn alleges that she "objected and complained" to Defendants through March 14, 2011—the day of her demotion—and described in her complaint specific instances in which she objected to discrimination during the year preceding her demotion. Compl. ¶¶ 48-51, 65. At the motion to dismiss stage, we accept these allegations as true and draw all inferences in Littlejohn's favor. *See*

*Ofori‑Tenkorang*, 460 F.3d at 300.  We have "not drawn a bright line to define the outer limits beyond which a temporal relationship is too attenuated to establish a causal relationship between the exercise of a federal constitutional right and an allegedly retaliatory action." *Gorman‑Bakos v. Cornell Coop. Extension of Schenectady Cnty.*, 252 F.3d 545, 554 (2d Cir. 2001).  But Littlejohn's allegations that the demotion occurred within days after her complaints of discrimination are sufficient to plausibly support an indirect inference of causation.[17]

Because Littlejohn's complaint alleges that her "protected activity was followed closely by discriminatory treatment," *Gordon*, 232 F.3d at 117, and because Littlejohn alleges facts that would be sufficient to establish the other elements of a prima facie case of retaliation, her allegations were more than sufficient to withstand

---

[17] Littlejohn's formal EEOC proceedings beginning in October 2011, however, are not causally connected to her demotion because those proceedings began more than six months after her demotion in March.  Thus, her demotion cannot have occurred in retaliation for them.  Similarly, Littlejohn's participation as a witness for fellow employee Tonia Haynes in Haynes's discrimination suit against ACS occurred in December 2011, well after Littlejohn's demotion.

the instant motion to dismiss. The district court erred in dismissing this claim. Littlejohn's retaliation claim therefore survives against the City under Title VII and survives against Defendant Baker under § 1981. As with her disparate treatment claim, Littlejohn's retaliation claim against Defendants Mattingly and Stradford was properly dismissed because they were not involved in her demotion.

## IV. Hostile Work Environment Claim

Littlejohn alleges that individual Defendants Mattingly and Baker created a hostile work environment based on Littlejohn's race from January 2010 to September 2012 in violation of Title VII, § 1981, and § 1983. Title VII prohibits an employer from discriminating in "compensation, terms, conditions, or privileges of employment, because of [an] individual's race, color, religion, sex or national origin." 42 U.S.C. § 2000e-2(a)(1). "The phrase terms, conditions, or privileges of employment evinces a congressional intent to strike at the entire spectrum of disparate treatment . . . , which includes

61

requiring people to work in a discriminatorily hostile or abusive environment." *Redd v. N.Y. Div. of Parole*, 678 F.3d 166, 175 (2d Cir. 2012) (internal quotation marks omitted).  Section 1981 provides that "[a]ll persons within the jurisdiction of the United States shall have the same right in every State . . . to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens."  42 U.S.C. § 1981.  Section 1981 has been interpreted to "provide[] a cause of action for race-based employment discrimination based on a hostile work environment." *Whidbee v. Garzarelli Food Specialties, Inc.*, 223 F.3d 62, 69 (2d Cir. 2000).  Finally, § 1983 provides that "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an

action at law." 42 U.S.C. § 1983. Section 1983, through its application of the Equal Protection Clause of the Fourteenth Amendment, "protect[s] public employees from various forms of discrimination, including hostile work environment and disparate treatment" on the basis of race. *Demoret v. Zegarelli*, 451 F.3d 140, 149 (2d Cir. 2006).

To establish a hostile work environment under Title VII, § 1981, or § 1983, a plaintiff must show that "the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993) (citations and internal quotation marks omitted). "This standard has both objective and subjective components: the conduct complained of must be severe or pervasive enough that a reasonable person would find it hostile or abusive, and the victim must subjectively perceive

the work environment to be abusive." *Raspardo*, 770 F.3d at 114 (citing *Harris*, 510 U.S. at 21-22). "The incidents complained of must be more than episodic; they must be sufficiently continuous and concerted in order to be deemed pervasive." *Id.* (internal quotation marks omitted). In determining whether a plaintiff suffered a hostile work environment, we must consider the totality of the circumstances, including "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Harris*, 510 U.S. at 23.

Littlejohn's hostile work environment claim is predicated on the following allegations[18]: Baker made negative statements about

---

[18] Because there is nothing in Littlejohn's EEOC charge that would have put the agency on notice that she was alleging hostile work environment on the basis of sex or sexual harassment, the EEOC cannot reasonably have been expected to investigate whether she experienced a hostile work environment based on sex. We therefore do not consider Littlejohn's sexual harassment allegations against Stradford in our analysis, as such allegations are not "reasonably related" to her

Littlejohn to Mattingly; Baker was impatient and used harsh tones with Littlejohn; Baker distanced herself from Littlejohn when she was nearby; Baker declined to meet with Littlejohn; Baker required Littlejohn to recreate reasonable accommodation logs; Baker replaced Littlejohn at meetings; Baker wrongfully reprimanded Littlejohn; and Baker increased Littlejohn's reporting schedule. Baker also sarcastically told Littlejohn "you feel like you are being left out," and that Littlejohn did not "understand the culture" at ACS. Compl. ¶¶ 49, 77.

These allegations could not support a finding of hostile work environment that is so severe or pervasive as to have altered the conditions of Littlejohn's employment. *See, e.g.*, *Fleming v. MaxMara USA, Inc.*, 371 F. App'x 115, 119 (2d Cir. 2010) (concluding that no hostile work environment existed even though "defendants wrongly excluded [the plaintiff] from meetings, excessively criticized her

hostile work environment claim based on race and color, as discussed below. *Williams v. N.Y.C. Hous. Auth.*, 458 F.3d 67, 70 (2d Cir. 2006) (per curiam).

work, refused to answer work-related questions, arbitrarily imposed duties outside of her responsibilities, threw books, and sent rude emails to her"); *see also Davis-Molinia v. Port Auth. of N.Y. & N.J.*, No. 08 CV 7586(GBD), 2011 WL 4000997, at *11 (S.D.N.Y., Aug. 19, 2011) (finding that "diminished [job] responsibilities," "exclu[sion] from staff meetings," deliberate "avoid[ance]," "yell[ing] and talk[ing] down to," and an increased workload of menial tasks, among other factors, was not enough to show that defendants' conduct was sufficiently severe or pervasive), *aff'd*, 488 F. App'x 530 (2d Cir. 2012). The claim was therefore properly dismissed.

**V.      Sexual Harassment Claim**

Littlejohn alleges that Defendant Stradford continuously sexually harassed her in violation of Title VII. The district court found that Littlejohn did not exhaust her administrative remedies with respect to this claim and dismissed it for lack of jurisdiction.[19]

---

[19] The district court held that Littlejohn's failure to exhaust administrative remedies precluded the court from asserting jurisdiction. While Littlejohn's

We agree that Littlejohn's sexual harassment claim was properly dismissed for failure to exhaust her administrative remedies.

Before bringing a Title VII suit in federal court, an individual must first present "the claims forming the basis of such a suit . . . in a complaint to the EEOC or the equivalent state agency." *Williams v. N.Y.C. Hous. Auth.*, 458 F.3d 67, 69 (2d Cir. 2006) (per curiam) (citing 42 U.S.C. § 2000e-5). The complainant must file the complaint with the relevant agency "within 300 days of the alleged discriminatory conduct and, before bringing suit, must receive a 'Notice of Right to Sue' letter from the EEOC." *Id.* Nevertheless, claims not raised in an EEOC complaint may still be part of the complaint later filed in federal court "if they are 'reasonably related' to the claim filed with the agency." *Id.* at 70. A claim is reasonably related to the filed claim "if the conduct complained of would fall within the scope of

---

failure to exhaust her administrative remedies did justify the dismissal of the claim, it was not for lack of jurisdiction. *See Francis v. City of New York*, 235 F.3d 763, 768 (2d Cir. 2000) (holding that exhaustion of administrative remedies is not a "jurisdictional prerequisite" to a Title VII claim).

the EEOC investigation which can reasonably be expected to grow out of the charge that was made." *Deravin v. Kerik*, 335 F.3d 195, 200-01 (2d Cir. 2003) (internal quotation marks omitted). In making such a determination, we focus "on the factual allegations made in the [EEOC] charge itself, describing the discriminatory conduct about which a plaintiff is grieving." *Id.* at 201 (alteration in original) (internal quotation marks omitted). For instance, if the factual allegations in the EEOC charge "suggest [two] forms of discrimination"—even though the charge itself specifies only one—"so that the agency receives adequate notice to investigate discrimination on both bases," the claims are reasonably related to each other. *Id.* at 202. This exception to the exhaustion requirement for reasonably related claims is "based on the recognition that EEOC charges frequently are filled out by employees without the benefit of counsel and that their primary purpose is to alert the EEOC to the discrimination that a plaintiff claims [she] is suffering." *Id.* at 201

68

(internal quotation marks omitted); *cf. Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam) (observing that "a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers" (internal quotation marks omitted)).

In Littlejohn's Intake Questionnaire and Charge of Discrimination filed with the EEOC on October 21, 2011, and February 2, 2012, respectively, Littlejohn claimed discrimination based on race and color. In the Charge of Discrimination, Littlejohn also claimed retaliation based on her complaints about such discrimination. Yet on neither of these forms did Littlejohn claim discrimination based on sex, even though there is a box to indicate discrimination based on sex located directly next to those for race and color. Nor did she reference Stradford or any of his alleged acts of sexual harassment in those completed forms or in her supplemental statements describing why she believed she was being

69

discriminated against. Indeed, Littlejohn's Intake Questionnaire and Charge of Discrimination do not include any factual allegations whatsoever describing the alleged sexual harassment by Stradford, even though the harassment allegedly began in March 2011, well before she completed these forms.

We agree with the district court that Littlejohn's sexual harassment claim is not "reasonably related" to her EEOC discrimination claims, which were based solely on race and color. Stradford's alleged sexual harassment does not "fall within the scope of the EEOC investigation which can reasonably be expected to grow out of the charge[s]" of race discrimination Littlejohn levied against Baker and Mattingly, *Deravin*, 335 F.3d at 200-01, as Stradford had no involvement in the race discrimination that allegedly occurred during the ACS/DJJ merger.

Littlejohn argues that the letter she sent to Kevin Berry, the Director of the EEOC New York District Office, in which she

70

referenced an "additional charge of hostile work environment-sexual harassment at the hands of [Stradford]," Littlejohn Aff., Ex. 11, itself constituted a charge of discrimination sufficient to fulfill Title VII's exhaustion requirements. However, we have made clear that unsworn letters sent to the EEOC describing additional claims of discrimination unrelated to the claims described in the EEOC charge cannot "enlarge [the] scope [of the original charge] to include new claims." *Holtz v. Rockefeller & Co.*, 258 F.3d 62, 83 (2d Cir. 2001). Although "EEOC regulations do allow 'written statements' of fact to amend a charge," those regulations allow such amendments "only insofar as they 'clarify and amplify allegations made' in the original charge or 'alleg[e] additional acts which constitute unlawful employment practices related to or growing out of the subject matter of the original charge.'" *Id.* (quoting 29 C.F.R. § 1601.12(b)[20])

---

[20] Section 1601.12(b) provides, in relevant part, that "[a] charge may be amended to cure technical defects or omissions, including failure to verify the charge, or to clarify and amplify allegations *made therein*. Such amendments and amendments alleging additional acts which constitute unlawful employment practices *related*

71

(alteration in original). A letter sent to the EEOC regarding a charge of discrimination is therefore "entitled to consideration only to the extent that it could be deemed an amendment to the original charge within the meaning of § 1601.12(b)." *Id.* It cannot "enlarge the scope of the [original EEOC] charge to encompass new unlawful employment practices or bases for discrimination." *Id.*

Here, Littlejohn's letter to Berry did not simply "clarify and amplify allegations made in the original [EEOC] charge," which claimed discrimination based solely on race and color, but rather included a "new unlawful employment practice[] or bas[i]s for discrimination" based on sexual harassment. *Id.* (internal quotation marks omitted).[21] Littlejohn could have filed a separate charge with

_____

*to or growing out of the subject matter of the original charge* will relate back to the date the charge was first received." 29 C.F.R. § 1601.12(b) (emphases added).

[21] Furthermore, one of the purposes of an EEOC charge is to "provide[] the EEOC with an opportunity to notify the prospective defendants and seek conciliation." *Holowecki*, 440 F.3d at 567. Littlejohn did not send Berry the letter attempting to add a sexual harassment charge until after she received a letter from Berry stating that her request that the EEOC grant her leave to bring a federal civil action with respect to her race and color discrimination charges had been

72

the EEOC alleging an additional basis of discrimination within the appropriate limitations period, but she could not amend prior unrelated charges to add this additional basis simply by sending Berry an unsworn letter.[22] *See id.*; 29 C.F.R. § 1601.12(b). Accordingly, Littlejohn did not present "the claims forming the basis" of her sexual harassment suit "in a complaint to the EEOC or the equivalent state agency," *Williams*, 458 F.3d at 69, and she therefore failed to exhaust her administrative remedies as to that claim. The district court properly dismissed her sexual harassment claim.

**CONCLUSION**

For the foregoing reasons, we **VACATE** the district court's judgment granting Defendants' motion to dismiss with respect to

---

forwarded to the Department of Justice, which effectively terminated that conciliatory process.

[22] This is hardly an unreasonable burden to impose, especially on Littlejohn, whose previous job duties as ACS's Director of EEO included investigating charges of discrimination and counseling other employees on the procedures for making such claims.

(1) Littlejohn's disparate treatment and retaliation claims against the City under Title VII, (2) Littlejohn's disparate treatment claim against Defendant Baker under §§ 1981 and 1983, and (3) Littlejohn's retaliation claim against Baker under § 1981; **AFFIRM** the dismissal of the other claims;[23] and **REMAND** for proceedings consistent with this opinion.

---

[23] Littlejohn also raises, for the first time on appeal, a *Monell* claim against the City for violating her First Amendment rights, as well as an equal protection claim against Stradford for his alleged sexual harassment. Neither of these claims were included in Littlejohn's complaint or raised below, and we therefore do not address them further.