*State of New York*
*Supreme Court, Appellate Division*
*Third Judicial Department*

Decided and Entered:  January 12, 2017                    522299
_____

DIANE CORVETTI,
                        Appellant-
                        Respondent,

        v

TOWN OF LAKE PLEASANT et al.,               MEMORANDUM AND ORDER
                        Respondents-
                        Appellants.

(And Six Other Related Actions.)
_____


Calendar Date:   November 22, 2016

Before:  Garry, J.P., Egan Jr., Rose, Clark and Mulvey, JJ.


_____


        Donohue, Sabo, Varley & Huttner, LLP, Albany (Kenneth G. Varley of counsel), for appellant-respondent.

        Murphy, Burns, Barber & Murphy, LLP, Albany (James J. Burns of counsel), for respondents-appellants.


_____


Egan Jr., J.

        Cross appeals (1) from an order of the Supreme Court (Aulisi, J.), entered September 16, 2015 in Hamilton County, which, among other things, partially granted defendants' motion for summary judgment dismissing the complaints, and (2) from an order of said court, entered September 14, 2015 in Hamilton County, which, upon reargument, among other things, reinstated plaintiff's complaint in action No. 1.

        Plaintiff owns three parcels of land located in the Town of Lake Pleasant, Hamilton County — a 51.6-acre parcel upon which

her home is located and two additional parcels consisting of approximately 204 acres and 68 acres.  A portion of plaintiff's residential parcel and each of the remaining two parcels are subject to a forest management plan and receive a tax exemption under RPTL 480-a.  Plaintiff has long disputed the annual tax assessments imposed by defendant Town of Lake Pleasant, resulting in repeated, protracted and often successful litigation (see Matter of Corvetti v Winchell, 75 AD3d 1013 [2010], lv denied 16 NY3d 701 [2011]; Matter of Corvetti v Winchell, 51 AD3d 47 [2008]; Corvetti v Town of Lake Pleasant, 227 AD2d 821 [1996]; Matter of Corvetti v Board of Assessors of Town of Lake Pleasant, 210 AD2d 667 [1994], lv denied 85 NY2d 802 [1995]).

In 2001, plaintiff and her then husband, Richard Corvetti, commenced the first of the seven actions now before us against the Town, defendant Town of Lake Pleasant Board of Assessment Review (hereinafter BAR), defendant Edward Winchell (then the Town's assessor) and various individual members of the BAR, alleging that, beginning in 1996 and continuing through 2000, the named defendants had systematically overvalued the subject properties, thereby violating plaintiff's and Corvetti's equal protection and due process rights.[1]  The named defendants answered and raised, among other defenses, collateral estoppel and absolute or qualified immunity.  Similar civil rights actions were commenced in 2002, 2003, 2004, 2005, 2006 and 2010 against, among others, the Town, and additional defendants were named, including — insofar as is relevant here — defendant Frank Mezzano (individually and in his capacity as Town Supervisor), defendant Victoria Buyce (individually and in her capacity as Town Assessor)[2] and certain of the newly appointed BAR members.

Following joinder of issue and discovery, defendants moved in January 2014 for summary judgment dismissing all seven of

---

[1]  Corvetti surrendered his rights to the relevant properties when he and plaintiff divorced in 2008, and his name does not appear in either the caption of the orders that are the subject of these appeals or the corresponding notices of appeal.

[2]  Buyce succeeded Winchell as the assessor in 2005.

plaintiff's complaints.  Plaintiff opposed this motion, contending, among other things, that defendants violated her civil rights under 42 USC § 1983.  By order dated July 18, 2014 and entered September 16, 2015 (hereinafter the first order), Supreme Court dismissed action No. 1 in its entirety, finding that it presented the same issues that were addressed and decided in a prior CPLR article 78 proceeding and, hence, the subject action was barred by collateral estoppel.  Supreme Court also dismissed all causes of action against the BAR (finding that the BAR was entitled to absolute or qualified governmental immunity), Mezzano and all remaining defendants who were named in their individual capacities, as well as plaintiff's claims for punitive damages.  Finally, the court found questions of fact as to plaintiff's due process and equal protection claims with respect to the Town and the assessors (in their official capacities) and denied defendants' motion for summary judgment to that extent.

In August 2014, plaintiff moved to reargue, seeking reinstatement of action No. 1 and all claims against the BAR and the individually named defendants, as well as her claims for punitive damages, and defendants cross-moved to reargue, seeking dismissal of all remaining claims against them.  Thereafter, by order entered September 14, 2015 (hereinafter the second order), Supreme Court partially granted plaintiff's motion — reinstating action No. 1 and barring action No. 2 instead, reinstating plaintiff's claims against Winchell and Buyce in their individual capacities and reinstating plaintiff's punitive damages claims except as to action No. 2; the court denied defendants' cross motion in its entirety.  Plaintiff now appeals from Supreme Court's first order insofar as it "dismissed [a]ction No. 1 in it[s] entire[t]y[,] dismissed plaintiff's claim for punitive damages . . . and dismissed plaintiff's claims against [the BAR, Mezzano] and the individually named defendants," as well as from so much of Supreme Court's second order as "dismissed [a]ction No. 2 and denied plaintiff's application for reargument with respect to [the] dismissal of her claims against the [BAR]." Defendants, in turn, cross-appeal from Supreme Court's first order to the extent that it partially denied their motion for summary judgment dismissing all seven complaints, as well as from Supreme Court's second order insofar as it partially granted plaintiff's motion to reargue and denied defendants' cross motion

to reargue in its entirety.

Initially, we agree that the claims asserted by plaintiff in action No. 2 relative to her 2001 assessment are identical to the claims raised in a prior CPLR article 78 proceeding and, therefore, action No. 2 is barred by principles of collateral estoppel. "Collateral estoppel, or issue preclusion, precludes a party from relitigating in a subsequent action or proceeding an issue clearly raised in a prior action or proceeding and decided against that party, whether or not the tribunals or causes of action are the same. The doctrine applies if the issue in the second action is identical to an issue which was raised, necessarily decided and material in the first action, and the plaintiff had a full and fair opportunity to litigate the issue in the earlier action" (Parker v Blauvelt Volunteer Fire Co., 93 NY2d 343, 349 [1999] [internal quotation marks, ellipsis and citations omitted]; see Town of Fort Ann v Liberty Mut. Ins. Co., 137 AD3d 1389, 1390 [2016]). "This rule applies to claims actually litigated or that could have been litigated, and despite the fact that the claims are based on a different theory or seek a different remedy" (Thomas v City of New York, 239 AD2d 180, 180 [1997] [citations omitted]). When this defense is raised, "[t]he burden rests upon the proponent of collateral estoppel to demonstrate the identicality and decisiveness of the issue, while the burden rests upon the opponent to establish the absence of a full and fair opportunity to litigate the issue in the prior action or proceeding" (Parker v Blauvelt Volunteer Fire Co., 93 NY2d at 349 [internal quotation marks, brackets and citation omitted]; see Gadani v DeBrino Caulking Assoc., Inc., 86 AD3d 689, 691 [2011]).

Here, a comparison of the allegations contained in the petition filed in conjunction with the 2001 CPLR article 78 proceeding with the allegations set forth in the complaint filed in action No. 2 reveals that plaintiff asserted virtually identical constitutional claims in each pleading — specifically, that the manner in which her properties were assessed violated her equal protection and due process rights and gave rise to a claim for damages under 42 USC § 1983. While it is true that the judgment rendered by Supreme Court in the context of resolving the CPLR article 78 proceeding did not expressly address the

merits of the constitutional claims asserted therein, Supreme
Court was well aware of plaintiff's arguments on this point and,
in granting the named respondents' motion for summary judgment
dismissing that proceeding, necessarily determined that the
underlying constitutional claims were lacking in merit.  Hence,
we are satisfied that "all of the factual issues dispositive of
the constitutional claims being raised in . . . action [No. 2]
were necessarily decided [by Supreme Court] in the prior article
78 proceeding" (Parker v Blauvelt Volunteer Fire Co., 93 NY2d at
350; compare O'Donnell v Ferguson, 23 AD3d 1005, 1007 [2005]; Liu
v New York City Police Dept., 216 AD2d 67, 68 [1995], lv denied
87 NY2d 802 [1995], cert denied 517 US 1167 [1996]).  As the
named defendants in action No. 2 met their initial burden of
demonstrating "the identicality and decisiveness of the issue" at
hand, it was incumbent upon plaintiff to show that she lacked "a
full and fair opportunity to litigate [that] issue" (Parker v
Blauvelt Volunteer Fire Co., 93 NY2d at 349 [internal quotation
marks and citation omitted]), which she failed to do.
Accordingly, Supreme Court did not err in finding that action No.
2 was barred by principles of collateral estoppel.[3]

---

[3]  In light of our conclusion in this regard, plaintiff's
arguments relative to the dismissal of her claims against
Mezzano, who was named as a defendant only in action No. 2, are
academic.  Were we to address the merits of her argument, we
would find that plaintiff's claims against Mezzano were properly
dismissed.  According to plaintiff, Mezzano, who served as Town
Supervisor from 1993 to 2009, violated her constitutional rights
by failing to remove Winchell, who was the Town's appointed
assessor from October 1990 to December 2005, from his position
during the relevant time period or to otherwise prevent Winchell
from overvaluing her properties.  The flaw in plaintiff's
argument on this point is that Mezzano was not Winchell's
supervisor; rather, Winchell served at the pleasure of the Town
Board (see Town Law §§ 20, 24; RPTL 310).  Accordingly, inasmuch
as Mezzano lacked the authority to singlehandedly remove Winchell
from office or otherwise curtail his allegedly impermissible
activities, plaintiff's claims against Mezzano were properly
dismissed.

We reach a similar conclusion regarding the dismissal of all claims against the BAR and its individual members, as we agree with Supreme Court that, as a quasi-judicial body, the BAR is entitled to absolute immunity. The principles governing the application of absolute or qualified immunity were summarized by the Court of Appeals in Arteaga v State of New York (72 NY2d 212 [1988]). As the Court explained, "[w]hether an action receives only qualified immunity, shielding the government except when there is bad faith or the action taken is without a reasonable basis or absolute immunity, where reasonableness or bad faith is irrelevant, requires an analysis of the functions and duties of the particular governmental official or employee whose conduct is in issue. The question depends not so much on the importance of the actor's position or its title as on the scope of the delegated discretion and whether the position entails making decisions of a judicial nature — i.e., decisions requiring the application of governing rules to particular facts, an exercise of reasoned judgment which could typically produce different acceptable results" (id. at 216 [internal quotation marks and citations omitted]).

Consistent with the provisions of RPTL 523, the Town was required to have a board of assessment review (see RPTL 523 [1] [a]), and its individual members, in turn, were required to attend mandated training (see RPTL 523 [1] [d]; [2]). Here, in accordance with its appointed duties, the BAR had a statutory obligation to "fix the place or places for the hearing of complaints in relation to assessments" (RPTL 525 [1]) and, on the date required by law, to "meet to hear complaints in relation to assessments" (RPTL 525 [2] [a]). Upon convening for the required hearing, the BAR could "administer oaths, take testimony and hear proofs in regard to any complaint and the assessment to which it relates" and, further, could "require the person whose real property is assessed, or his or her agent or representative, or any other person, to appear before [it] and be examined concerning such complaint, and to produce any papers relating to such assessment" (RPTL 525 [2] [a]). "Minutes of the examination of every person [so] examined" were required to "be taken and filed in the office of the . . . town clerk" (RPTL 525 [2] [a]), and the BAR thereafter was required to "determine the final assessed valuation or taxable assessed valuation . . . of the

real property of each complainant" (RPTL 525 [3] [a]), "prepare and verify a statement showing the changes determined to be made by them in the assessments" and notify each complainant of its determination and the time within which to seek judicial review thereof (RPTL 525 [4]).  In light of these statutory mandates, it is apparent that the BAR's determinations constitute decisions of a quasi-judicial nature and, hence, the BAR (and its individual members) are entitled to absolute immunity (see generally Matter of Town of Greenville, Orange County v New York State Bd. of Real Prop. Servs., 251 AD2d 788, 789 [1998]).

With respect to the alleged violation of plaintiff's equal protection and due process rights, plaintiff argues that, in the context of its second order, Supreme Court properly reinstated her 42 USC § 1983 claims against Winchell and Buyce in their individual capacities, as well as her claim for punitive damages. Defendants, in turn, argue that such claims should be dismissed in their entirety – citing the findings made by Supreme Court in its first order, wherein the court concluded that plaintiff failed to demonstrate that Winchell and Buyce were personally involved in the alleged deprivation of her constitutional rights.[4]  Defendants further contend, in the context of their cross appeal, that such claims should be dismissed against the Town.

---

[4]  In the first order, Supreme Court found that questions of fact existed with respect to plaintiff's due process and equal protection claims, but dismissed all causes of action against each of the individually named defendants – leaving intact only plaintiff's constitutional claims against the Town and the assessors (in their official capacities).  In so doing, Supreme Court expressly noted that plaintiff's allegations as to Winchell's and Buyce's personal involvement in the alleged deprivation of her constitutional rights were conclusory and unsupported by the record – a finding that was equally fatal to plaintiff's claim for punitive damages.  Upon reargument, Supreme Court – without explanation – reinstated plaintiff's 42 USC § 1983 and punitive damages claims against Winchell and Buyce, noting only that such claims could be pursued against municipal defendants who were sued in their individual capacities.

"When a taxpayer demonstrates that he or she has been the victim of an aggravated pattern of misuse of the taxing power, a 42 USC § 1983 due process claim has been stated" (Abbott v Town of Delaware, 238 AD2d 868, 870 [1997] [internal quotation marks and citations omitted], lv denied 90 NY2d 805 [1997]; see 423 S. Salina St. v City of Syracuse, 68 NY2d 474, 484 [1986], appeal dismissed and cert denied 481 US 1008 [1987]; Way v City of Beacon, 96 AD3d 829, 831 [2012]). Similarly, a taxpayer's allegation that a municipality has selectively reassessed his or her property will give rise to an equal protection claim under 42 USC § 1983 (see Matter of Resnick v Town of Canaan, 38 AD3d 949, 952 [2007]; Abbott v Town of Delaware, 238 AD3d at 870). More specifically, "[w]hen a defendant sued for discrimination under [42 USC § 1983] is a municipality, the plaintiff is required to show that the challenged acts were performed pursuant to a municipal policy or custom. The plaintiff need not identify an express rule or regulation, but can show that a discriminatory practice of municipal officials was so persistent or widespread as to constitute a custom or usage with the force of law, or that a discriminatory practice of subordinate employees was so manifest as to imply the constructive acquiescence of senior policy-making officials" (Littlejohn v City of New York, 795 F3d 297, 314-315 [2015] [internal quotation marks and citations omitted]). A local government may not, however, be sued under 42 USC § 1983 under a respondeat superior theory (see Shelton v New York State Liq. Auth., 61 AD3d 1145, 1148 [2009]), nor may it be sued "for a constitutional injury inflicted by employees or agents [who were] not acting pursuant to [an] official municipal policy or custom" (315-321 Realty Co. Assoc., LLC v City of New York, 33 AD3d 509, 509 [2006]).

With respect to plaintiff's constitutional claims against the Town, the underlying complaints allege — in a fleeting and conclusory fashion — that Winchell and Buyce acted "with the full knowledge" of the Town and, therefore, their allegedly impermissible acts necessarily "constitute[d] the official policy of the Town." According to plaintiff, the existence of this official policy is further evidenced by the fact that the assessed value of her properties increased in each of the subject revaluation years. At the summary judgment stage of this litigation, however, plaintiff must do more than merely allege a

pattern of discrimination.

Here, in support of their motion for summary judgment, defendants established through, among other things, the examination before trial testimony of and affidavits tendered by Winchell and Buyce that each of the challenged assessments was the product of a Town-wide revaluation process that, in turn, was conducted by an outside consultant utilizing an established, mass-appraisal methodology – a process defined by the consultant as "a systematic way [of] apprais[ing], on a mass basis, every property in the [T]own as of a common valuation date." Such proof further established that, although the assessed value of plaintiff's parcels indeed initially increased in each of the subject revaluation years,[5] Winchell and Buyce – after visiting a sampling of properties to ensure that the consultant's valuations were consistent with the actual characteristics thereof – thereafter adopted the fair market value assigned by the consultant without any adjustment thereto, with Winchell believing that the value assigned in each of the subject years was reasonable. Buyce attested to following a similar procedure during the time that she was the Town's assessor and expressly averred that plaintiff's properties "were reassessed [in] the same [manner] as every other property in the Town."

In opposition, although plaintiff highlighted perceived flaws in the mass-appraisal methodology, took issue with the manner in which Winchell and Buyce applied (or refused to apply) various factors relative thereto and detailed what she regarded as a long-standing pattern of overvaluing her properties, plaintiff's proof – in our view – fell short of raising a question of fact as to whether the Town, through Winchell and Buyce, engaged in "a discriminatory practice . . . [that] was so persistent or widespread as to constitute a custom or usage with the force of law" (Littlejohn v City of New York, 795 at 315 [2015] [internal quotation marks and citations omitted]). Absent

---

[5] As noted previously, the bulk of plaintiff's assessments over the years were reduced either by stipulation, settlement, adjustment by the BAR or as a result of RPTL article 7 proceedings.

an established policy or custom, and inasmuch as the Town cannot be vicariously liable for the acts of Winchell and Buyce, Supreme Court should have granted defendants' motion for summary judgment dismissing plaintiff's 42 USC § 1983 claims against the Town.[6] Similarly, inasmuch as punitive damages are not available against a municipality (see Cardoza v City of New York, 139 AD3d 151, 167 n 9 [2016]; Dorian v City of New York, 129 AD3d 445, 445-446 [2015]; Rekemeyer v Cerone, 252 AD2d 22, 26 [1999]), plaintiff's claims against the Town in this regard also must be dismissed.

Turning to the liability of Winchell and Buyce in their individual capacities, an individual may be held liable under 42 USC § 1983 only if he or she was "personally involved in the alleged deprivation" of the plaintiff's constitutional rights (Littlejohn v City of New York, 795 F3d at 314 [internal quotation marks and citations omitted]). To that end, "it [is] incumbent upon [the] plaintiff to allege particular facts indicating that each of the individual defendants was personally involved in the deprivation of the plaintiff's constitutional rights; mere bald assertions and conclusions of law do not suffice" (Shelton v New York State Liq. Auth., 61 AD3d at 1148 [internal quotation marks, emphasis, brackets and citations omitted]). "Personal involvement can be established by showing that: (1) the defendant participated directly in the alleged constitutional violation, (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong, (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance

_____

[6]  Our prior decisions involving plaintiff's properties are not to the contrary. In addition to pertaining to entirely different assessment years than the ones at issue here, Corvetti v Town of Lake Pleasant (227 AD2d 821 [1996], supra) addressed the viability of the asserted civil rights claim in the context of a motion to dismiss (as opposed to the instant summary judgment motion), and Matter of Corvetti v Board of Assessors of the Town of Lake Pleasant (210 AD2d 667 [1994], supra) concerned whether the named respondents engaged in a pattern of retaliatory and discriminatory conduct for purposes of an additional allowance under RPTL 722 (2).

of such a policy or custom, (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts, or (5) the defendant exhibited deliberate indifference by failing to act on information indicating that unconstitutional acts were occurring" (<u>Littlejohn v City of New York</u>, 795 F3d at 314 [internal quotation marks, ellipsis and citation omitted]; <u>see generally</u> <u>Shelton v New York State Liq. Auth.</u>, 61 AD3d at 1149).

As noted previously, Winchell and Buyce maintained that they relied heavily (and often exclusively) upon the consultant's computations in determining the appraised value to be assigned to, among other properties, plaintiff's residential parcel — essentially taking the position that they lacked the expertise to challenge the valuations determined by the consultant, as the result of which the values produced through the revaluation process "for each Town property, including [plaintiff's] properties, were accepted without change . . . and transferred to the Town's tentative tax rolls."  In light of the procedures employed, defendants contend, Winchell and/or Buyce lacked the opportunity to manipulate plaintiff's assessments in the fashion alleged.

As a starting point, there is no question that, despite their reliance upon and deference to the subject consultant, the individual assessors ultimately were responsible for the values assigned to each property within the Town and, more to the point, retained certain input and/or discretionary authority with respect to the valuation process.  For example, Winchell acknowledged at his examination before trial that he collected and entered certain data for the appraisal model, including property size and building style, size and condition. Additionally, the record reflects that both Winchell and Buyce had the ability to adjust certain factors applicable to the assessment formula, including the location multiplier, the influence factor and the percent good factor.[7]  Indeed, both

---

[7]  The percent good factor measures the depreciation attributable to a building, which, in turn, is measured by the effective age of the structure.

Winchell and Buyce acknowledged applying a positive influence factor to plaintiff's property — thereby increasing the assessed value — based upon, among other things, certain topographical features, and Winchell admitted that he also adjusted the percent good factor for plaintiff's property. Hence, there is little question that Winchell and Buyce indeed were personally involved — to one degree or another — in valuing plaintiff's properties. Without more, however, personal involvement in the valuation process does not automatically translate into a deprivation of plaintiff's constitutional rights.

With respect to the issue of improper motive, discriminatory or retaliatory conduct and/or malicious intent, the record makes clear that the factors over which Winchell and Buyce retained control were largely subjective, and the manner in which such factors were applied fell squarely within Winchell's and Buyce's essentially unfettered discretion. For these reasons, it was incumbent upon defendants to make a prima facie showing, in the context of their motion for summary judgment, that — with respect to Winchell and Buyce — such factors were applied fairly and evenhandedly or, at the very least, that there was a reasonable explanation for treating allegedly similar properties within the Town in a seemingly disparate fashion. This they failed to do. Without belaboring the point, suffice it to say that defendants' proof, which relied heavily upon the affidavits and examination before trial testimony of Winchell and Buyce, fell short of establishing that the assessors valued plaintiff's property in a nondiscriminatory fashion and, therefore, defendants failed to demonstrate their entitlement to summary judgment in this regard. Moreover, even assuming that defendants did meet their initial burden on the subject motion, plaintiff's proof in opposition, including the affidavits tendered by her expert and her former husband,[8] as well as the

8    Plaintiff's former husband averred that, after reaching a settlement of certain issues with the Town in 1997, he encountered Winchell in a local parking lot and expressed the hope that they would be able to "bury the hatchet." In response, Winchell purportedly indicated that "he disagreed with the lawyers and was going 'to put it right back up'" at the next

valuation data submitted for other allegedly similarly situated properties, was sufficient to raise a question of fact on this point.  Accordingly, Supreme Court properly reinstated the civil rights (and punitive damages) claims against Winchell and Buyce. The parties' remaining arguments, to the extent not specifically addressed, have been examined and found to be lacking in merit.

Garry, J.P., Rose, Clark and Mulvey, JJ., concur.


ORDERED that the orders are modified, on the law, without costs, by reversing so much thereof as denied defendants' motion for summary judgment dismissing the complaints against defendant Town of Lake Pleasant; motions granted to said extent and complaints against said defendant dismissed; and, as so modified, affirmed.



ENTER:

Robert D. Mayberger
Clerk of the Court

---

revaluation," an apparent reference to raising the assessment on the subject properties.  Although Winchell denied threatening to raise the assessment at the next revaluation, this conflicting proof presents a question of fact as to whether plaintiff's assessment was raised in retaliation for pursuing litigation against certain of the named defendants.