*Freeman v. Town of Irondequoit*

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

## SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1.   WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER").   A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 25th day of October, two thousand twenty-three.

PRESENT:
> DENNIS JACOBS,
> RICHARD C. WESLEY,
> BETH ROBINSON,
> > *Circuit Judges.*

---

Patrina Freeman,

> *Plaintiff-Appellant*,

> v.                                                                    23-112

Town of Irondequoit, Kimmie Romeo,
and John Perticone,

> *Defendants-Appellees*.

---

FOR PLAINTIFF-APPELLANT:    ARTHUR Z. SCHWARTZ,
                            Advocates for Justice Chartered
                            Attorneys, New York, NY.


FOR DEFENDANTS-APPELLEES:    SCOTT ROGOFF, Barclay Damon,
                            LLP, Rochester, NY (Arianna E.
                            Kwiatkowski, Barclay Damon,
                            LLP, Buffalo, NY, *on the brief*).

Appeal from a judgment of the United States District Court for the Western District of New York (Larimer, *J.*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the district court is **AFFIRMED**.

Plaintiff Patrina Freeman appeals the district court's judgment of dismissal, which it entered after it granted a motion to dismiss her amended complaint. As relevant here, Freeman brought claims under 42 U.S.C. § 1983 against Defendants John Perticone, Kimmie Romeo, and the Town of Irondequoit on her own behalf and, purportedly, as chairperson of the Irondequoit Commission Advancing Racial Equity ("ICARE"). Specifically, Freeman alleged that all three defendants engaged in race-based discrimination against her and ICARE. We assume the parties' familiarity with the underlying facts, procedural history, and arguments on appeal, to which we refer only as necessary to explain our decision to affirm.

2

After Freeman became the first Black Councilmember for the Town of Irondequoit, she endured a series of difficult encounters with Town employees and her fellow Councilmembers.[1]  Such hostilities increased after the Council created ICARE, a racial diversity and equity initiative that Freeman chaired.  In 2021, after ICARE was created, the Council approved two measures: (1) launching a program with the Urban League to help minority residents become first-time homeowners and (2) hiring a part-time administrative assistant for ICARE.  Two Councilmembers—Perticone and Romeo—subsequently had a change of heart, withdrew their support, and began actively opposing ICARE and the Urban League program.  The Council ultimately failed to approve funding for the ICARE administrative assistant, and the Town did not follow through with the Urban League program.  Freeman alleges that, though ICARE began as a Town Commission, it now functions as an unincorporated association.

In response to these incidents and others, Freeman brought § 1983 claims

---

[1] We draw our description of the operative facts from Freeman's amended complaint. Because we are at the motion to dismiss stage, we treat all well-pleaded factual allegations as true and draw all reasonable inferences in Freeman's favor.  *See, e.g.*, *Harris v. Mills*, 572 F.3d 66, 71 (2d Cir. 2009).  In so doing, we express no opinion as to the truth of Freeman's allegations.  And the question before us is not whether Freeman has been treated unfairly.  Rather, we must decide whether Freeman's amended complaint plausibly alleges a legal claim for which the courts can afford relief.

against Perticone, Romeo, and the Town based on alleged race discrimination by the individual defendants (Count 1) and the Town (Count 2). The district court granted the Defendants' motion to dismiss, and Freeman timely appealed.[2]

Having reviewed Freeman's amended complaint without deference to the district court, *see Littlejohn v. City of N.Y.*, 795 F.3d 297, 306 (2d Cir. 2015), we affirm for the reasons below.

## I. Count 1: Freeman's Equal Protection Claim Against Perticone and Romeo

Freeman's amended complaint alleges an equal protection violation in vague terms. Consistent with Freeman's arguments in responding to the defendants' motion to dismiss, the district court construed Count 1 as asserting a claim that defendants created a hostile work environment for Freeman and concluded that she had failed to state a claim. We agree.

Freeman's argument that Perticone and Romeo violated her individual rights by creating a hostile work environment is flawed for multiple reasons. Even if we concluded that Freeman, an elected Councilmember, could bring a § 1983 claim for a race-based hostile work environment against two fellow

---

[2] Freeman does not challenge the district court's dismissal of her claim under 42 U.S.C. § 1981. Because Freeman does not meaningfully brief any challenge to the district court's dismissal of her state law claim, she has abandoned any potential challenge to that dismissal. *See LoSacco v. City of Middletown*, 71 F.3d 88, 92–93 (2d Cir. 1995).

4

Councilmembers,[3] the incidents upon which she relies do not plausibly state a claim. Most of Freeman's allegations concern acts done by people *other than* Perticone and Romeo. And most of Perticone's and Romeo's alleged misconduct is protected by legislative immunity and cannot be considered. The acts by Perticone and Romeo that are not protected by immunity do not plausibly establish a hostile work environment claim against either defendant. We elaborate below.

A defendant can only incur liability under § 1983 for that defendant's *own* conduct in creating a hostile work environment. *See Raspardo v. Carlone*, 770 F.3d 97, 115–16 (2d Cir. 2014) (explaining § 1983 liability requires a defendant to *personally* violate a plaintiff's federal right). Thus, conduct by individuals other than Perticone or Romeo cannot support Freeman's hostile work environment claim. *See id.* (citing *Patterson v. Cnty. of Oneida*, 375 F.3d 206, 229–30 (2d Cir. 2004)). Accordingly, in assessing Count 1, we are required to disregard most of the factual allegations, including, for example, that Freeman was the only Councilmember whose plaque did not list her title and who had to wear her badge

---

[3] *See Raspardo v. Carlone*, 770 F.3d 97, 113–14 (2d Cir. 2014) ("[S]tate and local officials can be held individually liable under 42 U.S.C. § 1983 for violating the Equal Protection Clause of the Fourteenth Amendment by discriminatory acts *against those who work under them*.") (emphasis added); *cf. Littlejohn*, 795 F.3d at 313 (noting Title VII does not create liability in individual supervisors and co-workers who are not the plaintiff's actual employers).

to access Town facilities; that unlike her white colleagues, Freeman received incomplete and untimely packets for meetings; that several off-duty police officers appeared at public meetings unannounced, sat in the front row with their weapons openly visible, and glared at Freeman; and that a newly elected Town Supervisor began unilaterally asserting control over ICARE without consulting with Freeman, even though Freeman chaired the program.

The following allegations in Freeman's amended complaint identify conduct by Perticone, Romeo, or both:

- After the Town Council voted to have the Urban League administer ICARE's first-time homeowner program and to hire an administrative assistant for ICARE, both Perticone and Romeo changed their positions. They opposed the selection of the Urban League and actively worked to prevent the hiring of an administrative assistant.

- After changing her position, Romeo demanded an immediate accounting of all ICARE activities and a comprehensive budget.

- At a public meeting, Romeo read a statement announcing that some Town residents had complained about their inability to access information about ICARE's budget and activities. The Town Clerk could not corroborate Romeo's claim.

- After Romeo and Freeman got into an argument, Romeo filed a police report, falsely accusing Freeman of threatening her life.

- When Freeman approached Perticone to express her dismay about the situation, Perticone blamed Freeman for her predicament and accused her of having an agenda that was not in the best interests

6

of the Town.

- After Freeman said the police presence at Town Council meetings was intimidating, Romeo, the Council liaison to the police, was not supportive. Romeo said it was "a free country," and the police could attend Council meetings if they wished. Jt. App'x 37.

- When Perticone served as the Acting Town Supervisor, he said he would assert control over ICARE.

- When Freeman tried to record (presumably by video) the police during a meeting, Perticone chased her, screamed at her, and blocked her.

Most of these acts are protected by legislative immunity. The Supreme Court has held that local legislators are absolutely immune from individual liability for their "legislative activities." *Bogan v. Scott-Harris*, 523 U.S. 44, 49 (1988). Such activities include discretionary decisions implicating budgetary priorities and the services provided to constituents. *Id.* at 56–57. Perticone and Romeo's opposition to the Urban League and the hiring of an administrative assistant, Romeo's requests for information about ICARE's budget, and Romeo's recitation of complaints from constituents about ICARE are protected by legislative immunity. That's true even though Perticone and Romeo initially supported these measures. Freeman offers no authority suggesting otherwise.

The remaining acts are not sufficiently severe or pervasive to alter the conditions of Freeman's service, even assuming that, as an elected official, she

7

could bring a constitutional claim for creating a race-based hostile work environment. As relevant here, the standards for evaluating a hostile work environment claim under § 1983 are essentially the same as Title VII's. *See Naumovski v. Norris*, 934 F.3d 200, 212–14 (2d. Cir. 2019) (explaining the similarities and differences). Our decision in *Littlejohn* is instructive. There, we concluded the following allegations were insufficient to state a hostile work environment claim: the chief of staff made negative comments about the plaintiff to third parties, was impatient and used harsh tones with the plaintiff, declined to meet with the plaintiff, replaced the plaintiff at meetings, increased the plaintiff's reporting schedule, distanced herself from the plaintiff, and made derogatory statements to the plaintiff. *See* 795 F.3d at 321. Applying *Littlejohn*'s reasoning here, neither Perticone's shouting, interference with Freeman's recording, and statements regarding Freeman's agenda nor Romeo's false police report and her comment that it is "a free country," Jt. App'x 37, created sufficiently severe and pervasive hostility in Freeman's work environment so as to alter her conditions of employment.

## II. Count 2: Freeman's Equal Protection Claim Against the Town

We likewise affirm the district court's dismissal of Freeman's claim that the Town itself subjected her to a deprivation of rights. *See Monell v. Dep't of Soc.*

8

*Servs. of City of N.Y.*, 436 U.S. 658, 692 (1978). A plaintiff suing a municipality under § 1983 must allege that the municipality, through its deliberate conduct, was the moving force behind the alleged injury. *Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 404 (1997). A municipality can be liable for the acts of a single official, so long as that official's "edicts or acts" can fairly be said to represent official policy for the entire municipality. *Agosto v. N.Y. City Dep't of Educ.*, 982 F.3d 86, 98 (2d Cir. 2020).

In her amended complaint, Freeman does not identify which actions were taken pursuant to a municipal policy. However, in her reply brief, Freeman points to two. First, she alleges the Town implicitly condoned the intimidating actions of off-duty police officers during Town Council meetings because the Council failed to take ameliorative action. We understand this first claim as an allegation that the Town violated Freeman's personal rights to be free from a hostile work environment based on racial animus. Second, she alleges that after Perticone began serving as the Acting Town Supervisor, he took actions "designed to frustrate and impede" ICARE's homeownership program and "undercut its contract with the Urban League." Appellant's Reply Br. at 23. We understand this second claim, raised for the first time on appeal, as an allegation that the Town violated the Constitution by impeding ICARE's program. Both claims fail.

9

Regarding the Town's unwillingness to address the police presence, Freeman alleges:

> On several occasions between October and November 2021, off-duty armed members of the Irondequoit Police Department came unannounced to public meetings on the I-CARE budget. They sat in the front row, firearms openly visible, glaring at Plaintiff throughout the meeting. Ms. Freeman expressed to her fellow Councilmembers and Police Chief Alan Liard that these actions were intimidating.

Jt. App'x 37.

After Freeman spoke to Romeo, Romeo said the police had a right to attend the meeting and it was "a free country." *Id.* When Freeman tried to record the officers on one occasion, Perticone blocked and yelled at her. Freeman has not plausibly alleged an equal protection violation against the Town on this basis. Assuming an elected Councilmember (as opposed to an employee) can make a hostile work environment claim against the Town, and assuming (without deciding) that these allegations plausibly allege a municipal policy of allowing off-duty officers to intimidate Freeman, Freeman has not plausibly alleged sufficiently "severe or pervasive" conduct that altered the conditions of her employment. *Littlejohn*, 795 F.3d at 320.

To the extent that Freeman now asserts a § 1983 equal protection claim against the individual defendants or the Town on behalf of ICARE based on

10

Perticone's actions as the Acting Town Supervisor, we decline to address a claim

Freeman expressly disclaimed before the district court.   *See Greene v. United States*,

13 F.3d 577, 586 (2d Cir. 1994) ("[I]t is a well-established general rule that an

appellate court will not consider an issue raised for the first time on appeal.").   In

a letter to the district court regarding ICARE's standing, Freeman wrote, "I-CARE

only asserts one Cause of Action in this case, the Third Cause of Action."   Jt.

App'x at 70.   Freeman has not challenged the district court's dismissal of that

count, which asserted a claim for unlawful interference with contract under 42

U.S.C. § 1981.   *See* Appellant's Br. at 17 n.1 ("[Appellant] is not appealing the

dismissal of the Section 1981 claim.").

Freeman's argument on appeal that her complaint alleges a § 1983 claim on

behalf of ICARE notwithstanding her disavowal of any such claim before the

district court does not warrant an exception to this general rule. Among other

problems, she has not explained how ICARE, which Freeman alleges was formed

as a government entity but is now an independent unincorporated association, has

standing to assert claims based on wrongs allegedly inflicted against the *prior

incarnation* of ICARE which was a *Town Commission*.[4]

---

[4] To the extent that Freeman attempts to argue on appeal that the equal protection claim in Count
1 of her complaint encompasses a claim against the individual defendants on behalf of ICARE,

We have considered Freeman's remaining arguments and conclude that they lack merit.   Accordingly, we **AFFIRM** the order of the district court.

<div style="margin-left:40%">

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court

</div>

---

we decline to reach the argument for the same reason.   Even if Freeman had previously asserted an equal protection claim against the individual defendants on behalf of ICARE, even if ICARE did have the capacity to sue the individual defendants, and even if such a claim was legally cognizable, it would run up against the same legislative immunity hurdle as Freeman's claim on her own behalf.   *See Bogan*, 523 U.S. at 53–54.